[S. F. No. 5476. In Bank.—September 23, 1912.]

J. H. GIBBS and M. WARD, Respondents, v. ANDREW PETERSON, Defendant, Cross-complainant, and Appellant.

SALE OF STANDING TIMBER TO BE REMOVED—ABSOLUTE SALE—COVENANT FOR REMOVAL.—A contract for the sale of standing trees to be removed at a future date may make the sale of the timber absolute, and the agreement to remove within a specified or reasonable time merely a covenant. In such case the timber remains the property of the purchaser, although not removed within the specified time.

ID.—LAW OF CASE—CONSTRUCTION OF CONTRACT—REMOVAL WITHIN SPECIFIED TIME—COVENANT FOR RENT AND PAYMENT OF TAXES.—It is the law of this case that the contract in question, construed in the case of *Peterson* v. *Gibbs*, 147 Cal. 1, was an absolute conveyance of the timber standing on the land of the defendant, and that there was nothing in its terms which can be construed as making the removal of the timber a condition precedent to the passing of title, or as causing delay in such removal beyond the period of ten years from the date of the instrument, or failure to pay the rental reserved or one-half the taxes, to operate as a divesting of the title conveyed; and that the provisions of the agreement obligating the purchasers to pay rental in the event the timber was not removed within ten years, and to pay one-half of the taxes until the removal, were mere covenants not affecting the title to the timber.

ID.—SALE OF PORTION OF LAND AFTER SALE OF TIMBER—PAYMENT OF ENTIRE RENTAL TO SELLER—PERFORMANCE OF COVENANT.—Where a purchaser of timber standing on a tract of land has covenanted to pay the seller a specified rental of the land until the timber is removed, and prior to its removal the seller makes a conveyance of a

portion of the land, without any apportionment of the rental as between himself and his grantee, the payment by the purchaser of the entire rental to the seller is a performance of the covenant.

ID.—CONTRACT CONTEMPLATING REMOVAL OF TIMBER—NO RIGHT TO HAVE TIMBER PERPETUALLY REMAIN.—The contract in question, after conveying all the timber standing on a tract of land, and providing that the purchasers should have a period of ten years in which to remove it, and giving them full rights of ingress and egress over the land for its removal, further provided that the purchasers, in the event that the timber was not removed within that period, should thereafter pay the seller a stipulated yearly rental for the privilege of removing it, and that all the covenants of the seller and the privileges granted by the agreement should continue until the timber was removed. It was further agreed that each of the parties should pay one-half of the taxes on the land until the timber was removed. *Held,* that the agreement showed that the timber was sold in contemplation of its removal from the land, and with the understanding of the parties that it should be so removed, and that it did not give the purchasers the absolute right to perpetually maintain the timber on the land, upon the payment of the stipulated rental and taxes.

ID.—EQUITABLE RELIEF TO OWNER OF LAND—SEGREGATION OF INTERESTS OF OWNER OF TIMBER AND OWNER OF LAND.—After the expiration of the period provided by the contract during which such purchasers had the absolute right to maintain. the timber on the land, the owner of the land, upon a showing that the land is valueless to him so long as the timber remains thereon, and would be valuable if it were removed, is entitled to equitable relief for the segregation and beneficial appropriation of the respective interests in the property of the respective owners, analogous to the relief granted in an ordinary action for partition between parceners, joint tenants, or tenants in common.

ID.—FORM OF JUDGMENT SEGREGATING INTERESTS—REASONABLE TIME TO REMOVE—REMOVAL BY OWNER OF LAND—ACCOUNTING FOR PROCEEDS OF TIMBER.—In an action by such purchasers to enjoin a grantee of the vendor of a portion of the land from removing the timber therefrom, the defendant may set up such facts by way of cross-complaint, and, upon proof thereof, is entitled to have the judgment fix a reasonable time within which. the plaintiffs shall remove their timber from the land, and provide that if they fail to do so, the defendant may remove and sell the same at the expense and for the benefit of the plaintiffs, accounting to them for the net proceeds thereof. Such judgment should further provide that if the timber be not removed within the time so fixed, the defendant shall be entitled to retain from the proceeds of his sale of the timber, such an amount as will reasonably compensate him for his loss of the use and occupation of the soil from the expiration of the period fixed by the court for such removal to the time of actual removal, such amount to be

determined by the court. The judgment given should be interlocutory in its nature, the court retaining jurisdiction of the cause for the purpose of an accounting between the parties, in the event that plaintiffs fail to remove the timber within the specified time. Under such contract, the defendant is not entitled to any compensation for the maintenance of the timber on the land prior to the expiration of such time as may be fixed by the judgment, except possibly such portion of the annual rental as may be fairly apportioned to the land purchased by him.

APPEAL from a judgment of the Superior Court of Mendocino County. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Mannon & Mannon, for Appellant.

McNab & Hirsch, for Respondents.

ANGELLOTTI, J.—This is an appeal by defendant from a decree enjoining him from cutting down or removing any timber growing or standing upon certain described land, and from interfering in any way with plaintiffs' peaceable possession thereof, said plaintiffs being decreed to be the owners in possession and entitled to the possession of all of said timber. The action was one commenced on May 12, 1906, to obtain a permanent injunction enjoining the doing of any of said acts.

Demurrers were sustained to defendant's answer and cross-complaint, and, defendant declining to amend or appear at the trial, the trial court, after receiving evidence on the part of plaintiffs, found the facts to be as alleged in the complaint and gave judgment as already stated. The question presented by this appeal is whether the facts stated in the answer and cross-complaint were sufficient to show any defense to plaintiffs' action or any foundation for relief against them.

Substantially these facts are as follows: Defendant Peterson is the owner of the one hundred and sixty acres of land upon which he claimed the right to cut and remove the timber, subject to such rights therein as are possessed by plaintiffs under a certain instrument executed to them (and duly recorded on December 28, 1887) by C. Oppenlander and Gustav

Hansen, the then owners thereof, purporting to convey to them "all the timber now standing, lying or being" on this land and other lands belonging to them, aggregating some eight hundred acres. This instrument, after providing that the vendors "do by these presents grant, bargain, sell, and convey unto the said parties of the second part, . . . all the timber now standing, lying or being on" certain described land, was as follows, viz.:

"And the parties of the first part promise and agree to and with the parties of the second part, that they shall have a period of ten years in which to remove the timber from the above described lands, and they do covenant and promise to allow and empower the parties of the second part, their agents and servants, to enter in and upon the real estate upon which the timber hereby conveyed is growing or situate as above described, to cut such timber, manufacture the same into lumber, and do all things upon such land which may be necessary for the purpose of manufacturing such timber into lumber and the removal thereof, as well as the right to make roads and build camps upon such lands, and also full ingress and egress have over such land for the removal of the timber hereby conveyed, and also such timber as the parties of the second part may acquire upon adjoining lands or lands in the vicinity of the lands of the parties of the first part as described herein. The parties of the second part hereby covenant and agree to and with the said parties of the first part, that if the timber is not removed from the above described land within a period of ten years that they will pay a yearly rental to the parties of the first part of two hundred dollars a year thereafter for the privilege of removing such timber from the lands of the parties of the first part with the covenants and agreements of the parties of the first part herein to continue until all the timber is removed, and it is agreed between the parties hereto that all the privileges granted herein are to continue until such timber is removed, subject to the provisions of this agreement.

"It is further agreed by and between the parties hereto that each of the parties hereto are to pay one-half the taxes upon all of the foregoing described real estate that shall be covered with standing timber or upon which the timber is standing, that may be levied upon such land for state, county

or municipal purposes during each and every year from the date hereof until all·the timber is removed from such real estate.

. "Dated Ukiah, Dec. 28th, 1887.

"C. OPPENLANDER,
"G. HANSEN,
"MICHAEL WARD,
"J. H. GIBBS."

Peterson acquired his title to the one hundred and sixty acres on July 18, 1891, from C. Oppenlander, who had in the mean time acquired Hansen's interest, the deed reciting a consideration of $1,560, and expressly "excepting and reserving, however, for the benefit and use of a former grantee of mine, the standing and down timber on the hereinbefore granted land, and the privilege to work it up and to remove it from said land." Plaintiffs had actual notice of the acquirement of Hansen's interest by Oppenlander at the time thereof, and of the conveyance by Oppenlander to Peterson of the one hundred and sixty acres ever since July 19, 1901. Plaintiffs have never removed any of the timber or made any preparations to remove any of the timber from defendant's land, and the same is still standing and growing thereon, largely increased by· the natural growth thereof and greatly enhanced in value. The land is situate on the Albion River, a navigable stream by which the timber could have always been conveyed to a profitable market, and also within five miles of a railroad station, from which said timber could have been conveyed to a profitable market. A reasonable time for the removal of such timber has long since elapsed. The whole of the land is covered by a dense growth of redwood, pine, and other timber, and cannot be used for any other profitable purpose while such timber remains thereon. Such land is comparatively level, and is fertile and very productive, and if the timber was removed, all of the same would be valuable for agricultural purposes and fruit growing. Defendant has desired to use the same for such purposes for a long time, but has been prevented from so doing by reason of the presence of such timber. Plaintiffs have not paid any part of the taxes on such land for the years 1891 to 1896, both inclusive, and defendant has been compelled to pay all of the same in order to protect his interest therein from being

sold for taxes. The reasonable value of the use and occupation of such land is one hundred dollars per month. Defendant has repeatedly demanded of plaintiffs that they pay him a rental for said lands and remove the timber therefrom, but plaintiffs have refused to do either.

By the prayer of his cross-complaint, defendant asked for judgment awarding him the sum of eight thousand seven hundred dollars, the alleged value of the use and occupation of the land, and decreeing that plaintiffs had forfeited all their rights in the timber, "or that a future time shall be fixed by this court within which all of said timber shall be removed and that proper compensation be fixed by the court to be paid to this defendant by plaintiffs herein for the further privilege of removing said timber," and for general relief.

Certain questions as to the proper construction and effect of the instrument executed by Oppenlander and Hansen to plaintiffs on December 28, 1887, were before this court on an appeal in an action to quiet title instituted by the defendant herein against the plaintiffs herein on July 19, 1901, several years after the expiration of the ten-year period prescribed in such instrument. This court then said:

"While there is much apparent conflict in the decisions as to the proper construction of a contract for the sale of standing trees to be removed, it is well settled that such a sale may be absolute, and the agreement to remove within a specified or reasonable time merely a covenant, in which case the timber remains the property of the purchaser, although not removed within the specified time. (See 28 Am. & Eng. Ency. of Law, 2d ed., p. 541; *Hoit* v. *Stratton Mills,* 54 N. H. 109, [20 Am. Rep. 119].) The question in each case is as to what is the contract between the parties.

"Here there is absolutely nothing in the terms of the agreement which can be construed as making the removal of the timber a condition precedent to the passing of title, or as causing delay in such removal beyond the period of ten years from the date of the instrument, or failure to pay the rental reserved or one-half the taxes, to operate as a divesting of the title conveyed.

"The terms of the instrument literally signify an absolute conveyance of the timber, and there is nothing in the pro-

visions relied upon by plaintiff to impair the force of the plain words of present grant. The provision to the effect that the vendees should have a period of ten years in which to remove the timber that they had purchased must be read in connection with the provision to the effect that if it is not removed within ten years the vendees 'will pay a yearly rental to the parties of the first part of $200 a year thereafter for the privilege of removing such timber,' etc. This provision, together with the provision for the payment by the vendees of one-half of all taxes that may be levied upon the land from the date of the agreement until all of the timber has been removed, both of which are mere covenants in no way affecting the title, must be held to express the agreement of the parties as to the effect of any failure of the vendee to remove the timber within the designated period of ten years.'' (See *Peterson* v. *Gibbs,* 147 Cal. 1, 6, [109 Am. St. Rep. 107, 81 Pac. 121, 123].)

It is clear that this expression of the view of this court constitutes the law of this case. The opinion shows that it appeared from the record in that case that the defendants there (plaintiffs here) had not commenced to remove any of the timber, and that their alleged derelictions were the same in kind as are alleged here, the only difference being that they had not continued so long. What was said in the opinion disposes of all questions raised as to the forfeiture by plaintiffs of any of their rights in regard to such timber, and determines that they are the absolute owners thereof, notwithstanding their failure to take any step to remove the same, and notwithstanding their failure to pay any of the taxes for the years 1891 to 1896. The same would be true as to the failure of plaintiffs to pay the two hundred dollars per annum specified in said instrument, if there has been any such failure. But we do not understand any such failure to be alleged in either answer or cross-complaint, the rental referred to therein obviously being the amount to which defendant deems himself entitled, independent of any provision of the instrument, as the reasonable value of the use and occupation of his land by plaintiffs' timber. In no event would defendant be entitled to receive the whole of said two hundred dollars per annum, he having acquired only a small portion of the entire land on account of which such payment was to be made.

It does not appear that plaintiffs did not annually pay to Oppenlander the whole of said sum of two hundred dollars as provided in the instrument of December 28, 1887, and in the absence of any apportionment of such sum by defendant and his grantor to the respective parcels of land, it would appear that plaintiffs by so paying the whole sum to defendant's grantor fully performed their covenant in this regard. (See *Dreyfus* v. *Hirt,* 82 Cal. 621, 627, [23 Pac. 193].) As to the taxes it is further to be said, as was said in *Peterson* v. *Gibbs,* 147 Cal. 1, [109 Am. St. Rep. 107, 81 Pac. 121], that it was not alleged that any demand for reimbursement had ever been made on plaintiffs, and there was no allegation as to the amount of such taxes.

From what has been said, it seems clear that defendant was not warranted in proceeding on the theory that plaintiffs had lost all rights in the timber standing on his land, and that, notwithstanding the matters set up in his answer and cross-complaint, plaintiffs were entitled to a decree enjoining him from so doing. The effect of the former decision, which is the law of the case as between these parties, clearly is that no delay in the removal of the timber can operate as a forfeiture of plaintiff's rights in regard thereto. Learned counsel for defendant expressly admit in their petition for a hearing in this court after decision by the district court of appeal for the third district, that plaintiffs are the owners of the timber which covers defendant's land. In view of the facts both as to the taxes and the stipulation for the payment of two hundred dollars annually, it is clear that the equitable rule invoked by defendant that he who seeks equity must do equity would not have warranted the trial court in refusing to enjoin the threatened appropriation by defendant of plaintiffs' property.

The only questions remaining are as to the right of defendant under his cross-complaint in regard to the matter of compensation for the use and occupation of his land by plaintiffs' timber, and the matter of requiring plaintiffs within a specified time to remove such timber from the land.

It was said in the opinion in *Peterson* v. *Gibbs,* 147 Cal. 1, [109 Am. St. Rep. 107, 81 Pac. 121], that "it is true that the timber was sold in contemplation of its removal from the land, and that it was the understanding of all parties that

it should be so removed." There can be no doubt that this is clearly shown by the instrument upon which plaintiffs rely as their source of title to the timber. And while, in view of the terms of that instrument, no forfeiture of plaintiffs' rights can be caused by any delay in the removal of the timber from the land, we are satisfied that any construction of such instrument that would give to plaintiffs the absolute right to perpetually maintain such timber on the land, upon the payment of the "yearly rental" of two hundred dollars and the payment of one-half of the taxes, would be unwarranted. No such question was involved in *Peterson* v. *Gibbs,* 147 Cal. 1, [109 Am. St. Rep. 107, 81 Pac. 121], and nothing said in the opinion therein can fairly be held to determine such a question. In the agreement between the parties, plaintiffs were expressly given "a period of ten years in which to remove the timber," subject to no other burden than that of the payment of one-half of the taxes on all land covered with standing timber until the timber was removed therefrom. The provision as to what should be the rights of the parties in the event that the timber was not removed within ten years was manifestly inserted simply to protect the purchasers in the event that the timber was not removed within such time, to preserve all their rights therein until it was removed, and to require the payment of two hundred dollars per annum by them until such removal was had; in other words, as said in the opinion in *Peterson* v. *Gibbs,* 147 Cal. 1, [109 Am. St. Rep. 107, 81 Pac. 121]), "to express the agreement of the parties as to the effect of any failure of the vendee to remove the timber within the designated period of ten years." Clearly it was not intended thereby to confer upon plaintiffs the right to perpetually maintain the timber upon the land, and thus render the land valueless to the vendors, as, in view of the allegations of the cross-complaint, would be the result of the exercise of such a right. What, then, is the situation between these parties, in the light of the cross-complaint? Plaintiffs are the owners of the timber standing and growing on defendant's land, having by reason of such ownership, it may be conceded, an interest in the real property. They are such owners, however, under an instrument clearly contemplating and intending the removal by them of such timber. While under the terms of this instrument there can be no

forfeiture of their interest, the time expressly given by the instrument of conveyance during which they have the absolute right to maintain the timber on the land has long since expired. The land is valueless to its owner so long as the timber remains thereon, and would be valuable to him for agricultural and fruit-growing purposes if such timber were removed. Under these circumstances we cannot doubt the power of a court of equity to grant such relief to defendant as is analogous in its result to the relief granted in an ordinary action for partition between "parceners, joint tenants, or tenants in common" (Code Civ. Proc., sec. 752), to accomplish in some way a segregation and beneficial appropriation of the respective interests in the property to the respective owners. A suggestion of this nature is to be found in the opinion of the supreme court in Mississippi in *Butterfield Lumber Co.* v. *Guy,* 92 Miss. 361, [131 Am. St. Rep. 540, 15 L. R. A. (N. S.) 1123, 46 South. 78]. We think there can be no question that such relief is proper under such circumstances as were made to appear by the cross-complaint in this case. A different question would perhaps be presented if it were not clear that it was the contemplation and intention of the parties to the instrument of December 28, 1887, that the timber would be removed from the land by the purchasers. As to that we express no opinion as no such case is presented. We are simply determining the question presented by this particular contract, in the light of the decision already given as to its proper construction. (*Peterson* v. *Gibbs,* 147 Cal. 1, [109 Am. St. Rep. 107, 81 Pac. 121].) It is our conclusion that, assuming the facts to be as stated in the cross-complaint, the defendant was entitled to have the judgment fix a reasonable time within which plaintiffs shall remove their timber from defendant's land, and providing that if plaintiffs do not remove the same within said time, the defendant may remove and sell the same at the expense and for the benefit of plaintiffs, accounting to them for the net proceeds thereof. The judgment should further provide that if the timber be not removed within the time specified by the court, the defendant shall be entitled to retain from the proceeds of his sale of the timber, such an amount as will reasonably compensate him for his loss of the use and occupation of the soil from the expiration of the period fixed by the court for

such removal to the time of actual removal, such amount to be determined by the court. The judgment given should be interlocutory in its nature, the court retaining jurisdiction of the cause for the purpose of an accounting between the parties, in the event that plaintiffs fail to remove the timber within the specified time.

We are further of the opinion that, in view of the provisions of the instrument of December 28, 1887, defendant is not entitled to any compensation for the maintenance of the timber on the land prior to the expiration of such time as may be fixed by said judgment, except possibly such portion of the two hundred dollars per annum specified in such instrument as may fairly be apportioned to the land purchased by him from Oppenlander. As we have indicated, his right to this *pro rata* share does not appear to be involved in the case made by the cross-complaint. It must be assumed, in view of the want of allegation to the contrary, that plaintiffs have paid the two hundred dollars per annum to their grantors, as they were warranted in doing in the absence of an apportionment by such grantors and defendant, and notice to them thereof, and defendant's right, if any, to a portion of the amounts so paid, is against Oppenlander and not against plaintiffs here. As to any amounts remaining unpaid, if any such there are, it is clear that no apportionment could be made by the court in the absence, as parties, of the owners of the other land covered by the instrument of December 28, 1887.

Until the final determination of the issues presented by the cross-complaint, the plaintiffs should, of course, be protected against any interference by defendant with their timber, by a temporary injunction.

For the reasons stated, we are of the opinion that the demurrer to the cross-complaint should have been overruled.

The judgment is reversed, with directions to the lower court to overrule the demurrer to defendant's cross-complaint, with leave to plaintiffs to answer the same, and to proceed thenceforth in a manner not inconsistent with the views herein expressed.

Shaw, J., Sloss, J., Henshaw, J., Melvin, J., and Lorigan, J., concurred.

Rehearing denied.