[Civ. No. 8930.   Third Dist.   Apr. 4, 1957.]

WILLARD D. MILLER, as Executor, etc., et al., Respondents,
v. F. D. TABER et al., Appellants.

Mark M. Brawman for Appellants.

Barr & Hammond for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment declaring respondents to be the owners of all merchantable timber situate upon certain property owned by appellants. On and before November 17, 1950, the Fruit Growers Supply Company, a corporation, was the owner of approximately 10,000 acres of land located in Siskiyou County. Defendants entered into an agreement to purchase the land from the supply company for $20,142.10, payable $6,000 down and the balance in installments with 6 per cent interest on the unpaid balance. Appellants needed aid in financing the purchase and, accordingly, executed an agreement with W. D. Miller, now deceased, and his wife, Lottie M. Miller. In consideration of their advancing to him $6,000, they assigned to Miller and wife all right and title to the merchantable timber located on the property with the right to enter upon the land, to cut and remove the same. Respondents, whom we shall hereafter refer to as Miller, since W. D. Miller was the active participant for the spouses, not only paid the $6,000 which he had agreed to pay, $5,000 of which represented the price for the merchantable timber, but also paid the balance of the purchase price to the supply company, along with some accumulated interest and accruing taxes. After the down payment had been made, the supply company executed and placed in escrow a deed conveying the property to appellants, and simultaneously appellants executed and placed in escrow a deed purporting to convey the same property to Miller. When the full purchase price had been paid to the supply company, both deeds were placed of record. It is without dispute in the evidence that the deed from appellants to Miller was a mortgage to secure the repayment to Miller of funds advanced by him in the purchase of the property over and above the $5,000 he paid for the timber. By the terms of the agreement between appellants and Miller, no limitation of time was fixed as a period in which Miller must remove the timber. Appellants never repaid to Miller any of the funds which they were obligated to pay. In September of 1952, and after a part of the property had been logged by Miller, appellants represented to him that they desired a reconveyance of part of the property in order that they might negotiate an exchange with the federal government, whereby they would obtain lands then owned by the government and which had timber upon them. Accordingly, Miller did reconvey a considerable body of land by a deed which contained no reference to

Miller's right to timber. Again, in December of 1952, and under similar circumstances, a second deed was executed by Miller which reconveyed another portion of the property to appellants, but this time the deed contained a reservation of timber growing upon section 19 and portions of section 24, part of the reconveyed property, but contained no such reservation as to other lands embraced within the deed. The reservation, however, gave the right to remove the timber on the said reserved portions at any time prior to December, 1953, and it is in the evidence that all timber on the portions so reserved was taken off by Miller within the time allowed. In July of 1953 Miller reconveyed the balance of the property to appellants by a deed which did reserve the timber upon the land, giving Miller until July 30, 1958, to remove it.

After receiving the last deed, appellants refused to allow Miller to remove any more timber or to go upon the land for that purpose, insisting that since the deeds, save for the reservations noted, were absolute, Miller had no interest in the timber; and, thereupon, this action was brought by Miller, since deceased, and his wife. The complaint referred to all of the instruments and written agreements hereinbefore referred to and recited the foregoing history of affairs between the parties. Miller asked that the deeds be reformed so as to exclude therefrom the merchantable timber growing upon the land therein described and to grant to Miller the right to go upon the land and cut and remove the trees. It was also asked that the respective rights and duties of the parties under the agreements and instruments executed between them be determined and declared. By a third cause of action a money judgment was asked.

Although there was conflict in the evidence as to some of the matters hereinbefore recited, we have stated them in accordance with the rule on appeal that the conflicts must be resolved in support of the judgment. The trial court decided that the contract between appellants and Miller was of such nature that thereby Miller purchased from appellants all the merchantable timber standing on the land they were buying from the supply company; that he paid for it at the time of the contract or shortly thereafter and pursuant thereto, and that appellants having sold the timber to Miller and having received the full purchase price, Miller became, as between the parties to the agreement, the owner of the timber, and remained so throughout the transactions with

appellants. ■ The court also determined that when the full purchase price had been paid to the supply company, its deed to appellants was delivered to them, and their deed to Miller was delivered to him and that the latter deed constituted a mortgage only and conveyed no legal title to Miller, but created a lien upon appellants' title to the land less the timber to secure the repayment to Miller of the sums he advanced for the purchase of the property less the $5,000, which was the price he paid for the timber. It thus appears that before receiving the mortgage deed Miller had bought and paid for the timber and had begun to harvest it. True, he had no formal conveyance from appellants, but it was competent for the court in this action to declare him, by virtue of the facts, to be the owner of the timber.

■ There is no doubt that timber standing upon land can be conveyed before severance and be the subject of separate ownership. (*Gibbs* v. *Peterson*, 163 Cal. 758 [127 P. 62].) Therein, the Supreme Court quoted from 28 American and English Encyclopedia of Law, second edition, page 541, as follows:

"While there is much apparent conflict in the decision as to the proper construction of a contract for the sale of standing trees to be removed, it is well settled that such a sale may be absolute, and the agreement to remove within a specified or reasonable time merely a covenant, in which case the timber remains the property of the purchaser, although not removed within the specified time. . . . The question in each case is as to what is the contract between the parties."

■ It is familiar law that a deed given to secure the repayment of money owed is a mortgage and conveys no title, serving merely to create a lien as though the instrument were a mortgage in form. As a corallary, a reconveyance, that is, a following deed which purports to convey title to the mortgagor, amounts to no more than a release of the lien. (*Sunderland* v. *Griffith*, 1 Labatt 197; *Fletcher* v. *Morlock*, 251 Mich. 96 [231 N.W. 59].) In the latter case, the court said:

"The conveyance to Hendryx and wife was a mortgage; this fact is so fully established that we will not discuss it further.

"Plaintiff's title under her deed was perfect except for this mortgage. If the mortgage when paid had been discharged by proper writing of record, plaintiff's title would have been free . . . (41 C.J. 315 . . .) A reconveyance by

Hendryx and wife was not necessary to reinvest absolute title, but it was needed to clear record title. (41 C.J. 363.)

"Equitably the reconveyance by Hendryx and wife is a discharge of mortgage."

When Miller executed the three deeds which placed the legal title of record back in appellants, nothing more was necessarily accomplished than the release of the mortgage and the clearing of the record title. Miller's right to the timber was not affected by the reconveyance of the land except as those instruments did specifically alter his contractual rights. The first deed contained no reference to the timber whatever and therefore did not affect the rights thereto. The second specifically set up a limitation as to two sections of land, whereby Miller had to remove the timber by a future date or lose his rights thereto. It was shown that within the time reserved he did remove the timber from those two sections. The third and last deed likewise limited his right to remove timber from land described therein to July 30, 1958, and provided that as to such timber as was not removed prior to that date Miller's title should be forfeited to the appellants. The decree of the court was in accordance with the foregoing. It declared appellants to be the owner of all of the land which had been originally purchased from the supply company. It declared Miller to be the owner of all merchantable timber standing upon the land with the right to remove the same without limit as to time in accordance with the contract of sale of the timber, but limited to July 30, 1958, as to the land covered by the last deed.

In support of their appeal appellants make certain specific allegations of error. They first contend that the trial court did not have sufficient evidence before it to reform the deeds upon the ground of mutual mistake. It is true that the complaint asked reformation of the deeds upon that ground, that the trial judge in a memorandum opinion declared that he did not believe a sufficient case of mutual mistake had been made out. However, this action was one for declaratory relief and was not confined wholly to the matter of reformation. What the trial court did was to give effect to the three deeds as releases of the mortgage lien and in this, as we have said, we think it acted correctly. There was no necessity for reformation once the deeds were understood to have been nothing more than releases of the mortgage lien created by the deed from appellants to Miller. Appellants also

complain that the trial court failed to find on the issue of mutual mistake, but, in accordance with what we have just said, such findings were unnecessary.

Finally, appellants contend that the money judgment rendered is not supported by the evidence. By the contract between them, made when appellants contracted to purchase the land from the supply company, Miller was specifically bound only to the extent of furnishing the first $6,000 to be paid for the property. Five thousand of this was not repayable to him, being the purchase price of the timber. Appellants did agree, however, to repay the $1,000 and any other sums that Miller might advance to them wherewith to pay the supply company. Also, appellants agreed to repay to Miller any taxes he might pay on the land "after 1952." As we have said, Miller actually paid the entire purchase price. It would appear that Miller was entitled to recover all of the funds he advanced, save possibly taxes paid by him which we will discuss further. However, the trial court gave judgment for the $1,000, that is, the remainder of the $6,000 after subtracting therefrom the $5,000 paid for the timber, for the sum of $1,013.60 for taxes, and for the sum of $1,206.13 for interest accrued. ■ Appellants attack the interest award and their argument is as follows: The trial court gave no judgment for the purchase price of the property advanced by Miller, save only to the extent of $1,000. It is to be assumed, therefore, that the trial court considered there had been a waiver by Miller of his right to repayment of the principal, and it should, therefore, logically follow that the waiver must have included the right to recover interest. There was no specific finding of waiver. We do not attempt to explain why the principal was not allowed save as to the sum of $1,000. The contract and the facts would appear to have warranted it. However, Miller is not appealing, and as against the judgment we cannot indulge in any presumption that the court found there had been any waiver at all. Appellants cannot complain that the judgment was less than it should have been.

As to the taxes the contract provided: "Taxes advanced by you for all years after 1952 are to likewise be refunded, as well as principal and interest before I am to make any profit. A further sum of $5,000.00 need not be refunded by me to you, for this amount is the consideration that you are to give for the timber." The contract was made in September of 1950, at which time the taxes for the year 1950-1951 were a

lien on the land. Since the record does not disclose otherwise, we assume that the supply company paid those taxes. We think the trial court correctly construed the contract as obligating appellants to refund to Miller any taxes he might pay for the years 1951-1952 and following. The 1951-1952 taxes were paid by Miller and the judgment ordered the amounts refunded.

Appellants contend that the court erred in striking out a portion of appellant F. D. Taber's testimony. The following appears: Taber was asked on cross-examination if he had disposed of any of the land. He said he had not, nor had he made any contract to do so. He was then asked if, since the date of his contract to purchase the land, he had entered into any contract with anyone for exchange of any of the land, and answered that he had made an exchange with the government. The court thereupon struck that part of the testimony from the record, and appellants contend that it erred in so doing because the answer was responsive to the question asked; the testimony was material as showing part performance by Taber of his understanding and agreement with Miller to exchange lands with the government whereby Miller might acquire additional timber; and was material as rebutting the statement by the witness Lewis, who was Miller's agent, that apparently nothing had been done by Taber to effect any exchange of lands. This evidence, appellants say, would have, along with other evidence, compelled the court to make a finding, had it found at all upon the subject matter, that there was no mutual mistake in the form of the deeds from Miller back to appellants. We have already said that the judgment is to be supported, not upon the theory of reformation for mutual mistake, but upon the theory that the deed from appellants to Miller being a mortgage only, the deeds back were releases and did not, except as specifically declared, affect Miller's title to the timber or his right to remove the same without limitation as to time.

There being no further contentions of error, the judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.