[Civ. No. 15225. Second Dist., Div. One. Sept. 30, 1946.]

THE BEVERLY HILLS NATIONAL BANK AND TRUST COMPANY (a National Banking Association), Respondent, v. A. SERES, Appellant.

Sidney Fischgrund for Appellant.

James A. Houlahan for Respondent.

WHITE, J.—Plaintiff, The Beverly Hills National Bank and Trust Company, brought an action of unlawful detainer

against the defendant and appellant, A. Seres. Trial was had before a jury, at the conclusion of which the court directed that a verdict be entered for the plaintiff as prayed for in its complaint. From the judgment entered upon such verdict defendant prosecutes this appeal.

In its complaint plaintiff alleged that on or about October 1, 1944, Adolph Fleishman and his wife orally leased the premises here in question (a storeroom known as 828¼ South Broadway, in the city of Los Angeles) to the defendant on a month-to-month tenancy, for $400 per month, payable in advance on the first of each month; that defendant took possession on or about October 1, 1944; that plaintiff by mesne conveyances acquired title to such property, and on January 6, 1945, served a notice requiring defendant to deliver up possession of the premises at the expiration of one month; that defendant held over and continued in possession without plaintiff's consent, and failed to pay one week's rent. Plaintiff prayed for restitution, unpaid rent, treble damages for so long as defendant continued in possession, costs, and other relief.

Defendant by his answer denied that the property was leased to him on a month-to-month basis, and alleged that prior to October 1, 1944, A. Fleishman, and wife, the then owners of the premises, agreed to lease the same to defendant for a term of five years at a monthly rental of $400, and on or about October 1, 1944, represented to defendant that they were negotiating for the sale of the property to plaintiff, "and for that reason the said owners prepared and presented to the defendant a written lease for the term of five years commencing on the 1st day of December, 1944, at a monthly rental of Four Hundred ($400.00) Dollars, payable in advance on the first day of each and every month," a copy of the written lease being attached to the answer; that the said owners then "represented to the defendant that the plaintiff would execute and deliver said lease . . . provided it was deposited in escrow together with the rent as therein provided, and that if the plaintiff would not execute and deliver said lease . . . then the owners themselves" would do so; and that said owners did "acknowledge in writing the agreement to lease the said premises to the defendant for the term of five (5) years . . . and thereupon did subscribe to a memorandum thereof in writing in the form of a letter" attached to the answer. De-

fendant further alleged that he duly tendered the rent due plaintiff, which plaintiff refused to accept.

As a separate defense defendant realleged the facts above set forth, and further, that in reliance upon the representations of said owners defendant executed the written lease; that after such agreement to lease was made defendant arranged to pay $750 to the then occupant of the premises as consideration for said occupant to surrender possession, with the knowledge of and without objection by said owners and "with full knowledge upon their part that the defendant relied upon the agreement of said owners to lease said premises to the defendant for five (5) years . . ."; that defendant took possession about October 24, believing and understanding that he had leased the premises for five years; that relying upon such agreement to lease, defendant made substantial alterations and valuable improvements at considerable expense and with the knowledge of said owners to the extent of about $5,000; that the form of written lease above referred to was delivered to the plaintiff prior to its purchase of the premises and that plaintiff had knowledge that defendant took possession about October 24, 1944, relying upon the said owners' agreement to lease; that before purchasing the property, plaintiff knew of the written memorandum or letter which had been executed by Fleishman and delivered to defendant; and that at the time of the purchase by plaintiff it had full knowledge that defendant took possession with the full belief and understanding that he had leased the premises for five years and that defendant had made substantial improvements and alterations in reliance upon the aforesaid agreement to lease; and that plaintiff was thereby estopped from claiming that defendant did not have a valid 5-year lease.

As a second affirmative defense defendant further alleged: (1) That he took possession pursuant to the oral agreement for a 5-year lease; (2) that he made substantial improvements and paid or tendered the rent, and is willing to perform the terms of the lease; that plaintiff acquired title to the property with knowledge and notice that defendant had taken possession, had made substantial improvements, and had complied with all the provisions of the lease hereinabove referred to.

Viewing the evidence in the light most favorable to appellant, it appears that appellant took possession of the premises in controversy on October 24, 1944, for the purpose of operat-

ing a shoe repair shop therein. Prior thereto Mr. Adolph Fleishman, then owner of the premises, had a conversation with appellant with respect to leasing the premises for $400 per month, in which conversation appellant stated, ''As long as you promise me I will get a five-year lease, I am willing to pay $400 to start right away,'' to which Mr. Fleishman replied, ''Don't worry about anything, regardless of what happens to the property, you will get a lease and you can count on it.'' In a subsequent conversation appellant stated that he would be put to considerable expense for improvements and alterations upon moving into the premises, and Mr. Fleishman said, ''Don't worry about anything, go ahead and do as you please, you will get a five-year lease commencing November 1st, 1944, at $400 per month.'' Mr. Fleishman further said, ''You will get the store November 1st. I made arrangements to give notice to move out at the end of October, and you can move in the 1st of November.'' On October 11, 1944, Mr. Fleishman brought to appellant a form of typewritten lease for a five-year term. Mr. Fleishman did not execute this lease, but informed appellant that he was negotiating for the sale of the property to the Beverly Hills National Bank, plaintiff and respondent herein and that appellant should make out checks for the first and last months' rent payable to respondent bank, which was done. In the form of lease presented by Mr. Fleishman respondent bank was named as lessor. Appellant executed the lease as lessee. The lease and the two checks were thereupon deposited by Mr. Fleishman in an escrow at the respondent bank. The conversation at this time, as testified to by appellant, was as follows:

''At that time he brought me the lease to sign, and he himself made out the check, that is, for the first month's rent, and the second month's rent, and he told me that he is going to put this in escrow, and as far as I am concerned whether the Beverly Hills Bank and Trust Company was in the lease or not you move in the place and he will guarantee the lease.''

After the execution of the lease form by appellant, he arranged for the payment of $750 to the occupant of the premises in return for immediate surrender of the premises, and on October 24 appellant took possession and commenced alterations and improvements, including the construction of a new front on the store, the installation of electric power equipment for his machinery, and various other improvements, at a total cost of about $5,200. Shortly after November 1, 1944,

while the work was still going on, Mr. Fleishman appeared at the store and warned appellant against spending too much money until he got his lease, but at that date the work was already well under way and contracts therefor had been let.

On December 1, 1944, at the office of appellant's attorney, Mr. Fleishman signed and delivered to appellant a letter which had been prepared by appellant's attorney, reading as follows:

"Mr. Abraham Seres
828¼ South Broadway
Los Angeles 14, California

"Dear Mr. Seres:

"This is to acknowledge that I have agreed to give you a lease on the premises at 828¼ South Broadway, Los Angeles, California, which you are now occupying, for the term of five years from November 1, 1944, at a rental of $400.00 per month, payable in advance on the first day of each month, and in accordance with the conditions and provisions contained in the form of lease executed by you and delivered to the Beverly Hills National Bank and Trust Company, where it has been deposited in the escrow between myself and the said bank which contemplates purchasing said property.

"In the event the bank refuses to execute this lease and purchase the property, I shall execute a lease containing the conditions and provisions set forth in the one so deposited in escrow.

"Very truly yours,
A. Fleishman."

With respect to his negotiations with Mr. Seres, Mr. Fleishman's testimony was substantially as follows:

That about the middle of October "we talked about making this lease, and he said he wanted the lease, was willing to pay the rent, and I told him we would make a lease"; that he opened negotiations for the sale to plaintiff after the foregoing conversation; that he told appellant "to be careful with his money he spent until he gets the lease or gets some assurance of a lease," but this warning came after appellant had moved in; that he signed the letter above quoted on an occasion when he was trying to arrange with Mr. Seres to accept a shorter term lease which was offered by plaintiff. With respect to the lease forms, he testified, "Well, I told Mr. Seres I prepared the leases which he could deposit with the Beverly Hills

National Bank and Trust Company if they accepted it, when his check was with it, the first and last months' rent. . . . He said he would do it and he did it.'' He further testified that with respect to the negotiations, ''He (appellant) said he would have considerable expense there for the five year lease and I agreed on it.'' On cross-examination he testified that they had four or five conversations. ''He wanted a lease, and I agreed to give him one, and that was the whole thing.''

On November 28, 1944, plaintiff bank addressed a letter to Mr. Fleishman requesting that he procure the signature of Mr. Seres to a statement to the effect that he held possession of the property as a month-to-month tenant and not under a lease, and that he had no interest in the property other than as such month-to-month tenant. Mr. Fleishman did not take the letter to Mr. Seres, and so far as the record discloses, plaintiff bank made no further effort to secure any statement from Mr. Seres.

A trust officer of plaintiff bank testified: ''I don't know when Mr. Seres took possession of the property. . . . We made two inspections of the property, once prior to our arrangement for the purchase of the property, and Mr. Seres was not in possession then; the tenant that was in possession was the House of Textiles. After we acquired the property our regular inspection revealed that Mr. Seres was in possession.'' He further testified that some time between the latter part of October and the middle of November, during the period of bringing down the title, he was informed by his escrow officer that Mr. Seres had signed a lease and deposited it in escrow together with checks for the first month's rent (for December, 1944), and the last month's rent (for November, 1949); that his escrow officer mailed the lease and checks back to Mr. Seres ''immediately after we were informed that the leases were there,'' but he did not recall the exact date. From other testimony it would appear that the leases were returned to Mr. Fleishman, rather than to Mr. Seres.

It was also conceded by counsel that plaintiff bank ''had knowledge of the fact that defendant Mr. Seres took possession of the property some time in October.''

There appears also to have been some conversation between Mr. Fleishman and defendant, at about the time defendant took possession, concerning the necessity of securing the consent of the Citizens National Bank to the making of a lease, as well as the necessity of the bank's securing an order of court in connection therewith, but from other evidence it appears

that title to the property stood in the name of Mr. Fleishman alone and no other person had any interest therein.

An employee of defendant testified to a conversation between Fleishman and defendant in which Fleishman said, ". . . go ahead and move in, and I guarantee you a five-year lease . . . I am the owner and I can give you a five-years lease." Plaintiff objected to this testimony "on the ground of the hearsay rule" and moved to strike it "as within the statute of fraud." The trial court ruled that the objection be sustained. The court also rejected, on the ground that the statute of frauds would not permit it, an offer of testimony by defendant's wife to the effect that "Mr. Fleishman spoke to the witness on the telephone and stated to the witness that Mr. Seres could move into the premises whenever and as soon as he desired and he would get a five-year lease"; that in another conversation Mr. Fleishman stated in substance that Mr. Seres could spend any amount of money toward improvements, and that at the time of the execution of the leases which were sent to plaintiff bank Mr. Fleishman stated in substance that Mr. Seres shouldn't worry, that he has a lease for five years.

Plaintiff's counsel moved for a directed verdict upon two grounds: "One of them is based upon the conditional writing, which is the only memorandum in writing which would take the case out of the statute of frauds, and that shows it was purely a conditional agreement to execute a lease, and the condition never arose whereby the promisor was obligated to execute the lease. In other words, the condition was defeated by the bank purchasing the property.

"Second ground for the motion is that the part performance relied upon was not a part performance under the agreement itself. It was a part performance under another lease, a part performance before the agreement itself came into existence —the alleged agreement came into existence."

There can be no question but that the evidence above recited would warrant application of the doctrine of equitable estoppel so as to foreclose plaintiff's grantor, Fleishman, from relying upon the statute of frauds to support a claim that no valid 5-year lease had been entered into. (*Seymour* v. *Oelrichs,* 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154] ; *Vierra* v. *Pereira,* 12 Cal.2d 629 [86 P.2d 816] ; *Wilson* v. *Bailey,* 8 Cal.2d 416, 421 [65 P.2d 770] ; *Halsey* v. *Robinson,* 19 Cal.2d

476 [122 P.2d 11].) In *Seymour* v. *Oelrichs, supra,* at page 794, it was held that the doctrine ''is based upon the principle 'thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme.' (2 Pomeroy's Equity Jurisprudence, sec. 921.) It was said in *Glass* v. *Hulbert,* 102 Mass. 24, 35 [3 Am.Rep. 418] : 'The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its enforcement, after the other party has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds.' . . .''

In *Halsey* v. *Robinson, supra,* the doctrine was applied in favor of defendants who had leveled and improved farm land in reliance upon a promise by the plaintiffs to renew a lease. In *Vierra* v. *Pereira, supra,* the defendants orally agreed to lease 13 acres to plaintiffs for a period of three years. Plaintiffs leveled the land, prepared it for irrigation and planted crops, expending over $688 and 200 hours of labor. The trial court's holding, upon sharply conflicting evidence, that the defendants were estopped to deny the existence of the lease or raise the bar of the statute, was upheld on appeal.

In the present case, the defendant not only paid money to secure early possession of the premises, but made substantial improvements of a permanent nature. Aside from the expenditures necessary in setting up his shoe repair machinery, he spent substantial sums to remodel the front of the premises, as well as for painting, and for repairing the floor.

It must be held, therefore, that as between Fleishman and the defendant, the latter upon taking possession of and improving the premises held an enforceable 5-year lease. ██ It is well settled that the purchaser of real property has construc-

tive notice of the rights of persons in possession and takes title subject thereto. (*J. R. Garrett Co.* v. *States,* 3 Cal.2d 379 [44 P.2d 538]; and cases therein cited; 15 Cal.Jur. § 146, p. 735, and cases cited.) In *Bessho* v. *General Petroleum Corp.,* 186 Cal. 133, 137 [199 P. 22], it was said:

"It is conceded at the outset of this discussion that the subsequent purchaser or lessee of premises in good faith and for a valuable consideration and without notice, either actual or constructive, of the rights or claims of persons holding a prior unrecorded lease or deed of the same premises take the same free of such prior rights or claims. The exception to this rule is this: that if the prior grantee or lessee of the premises under an unrecorded deed or lease has gone into actual possession of the same, such possession may operate to put subsequent purchasers or lessees of the premises upon notice or inquiry as to their prior rights or claims thereunder."

In *Scheerer* v. *Cuddy,* 85 Cal.270 [24 P. 713], the property was an office building. The owner leased some of the rooms to a lodge. These rooms were kept locked. The purchaser assumed the lodge-rooms were vacant. The court, in holding that the purchaser was to be charged with notice of the lessee's possession, said: "It was his duty to know who was in possession of the property before making the purchase, and his purchase without ascertaining the fact must be regarded as the strongest evidence of bad faith on his part. The burden of making the proper inquiry was cast upon him by the mere fact of actual possession on the part of the appellant."

We come now to a consideration of the effect of the letter signed by Fleishman on December 1, as well as the effect, if any, of the preparation and execution by defendant of the written 5-year lease which was sent to plaintiff bank. It is urged by respondent that the trial court properly excluded evidence tending to contradict the terms of this letter; that the letter, as well as the other evidence, shows that there never was an absolute agreement on the part of Fleishman to give a lease, but that on the contrary defendant took a chance that either the bank would not purchase the property, or if it did, would execute the proffered lease.

True, the second paragraph of the letter is conditional, in that thereby Fleishman promised to execute a lease if the "bank refuses to execute this lease and purchase the property." However, defendant's case did not rest primarily upon this letter, which was not written until several weeks after

defendant had taken possession and made improvements. The evidence presented, exclusive of the letter, was ample to warrant the conclusion that he was repeatedly promised a lease 'and that in reliance upon such promises he changed his position to his detriment, and that therefore it would be inequitable to permit the bar of the statute of frauds to be raised. By the letter Fleishman unqualifiedly admitted that he had promised defendant a lease upon the terms and conditions set forth in the lease form which had been sent to the bank. The conditional promise contained in the second paragraph amounted to no more than a further reassurance that Fleishman would see to it that defendant got his lease, either from the bank or from Fleishman.

It is further argued by respondent: ''This document (the letter) was prepared by defendant's attorney and submitted to plaintiff's grantor, Fleishman, for execution after a request had gone out from the plaintiff to find out what were the terms of the tenancy under which the defendant held possession of the premises. It is our opinion that the document tells the story and that if there are any ambiguities therein they are chargeable to defendant, and not to plaintiff, who bought the property upon the representation that that was the agreement under which defendant held possession.'' There is no evidence in the record as to what, if any, representations were made by defendant to plaintiff as to the terms of his tenancy, nor is there any evidence as to what steps, if any, the plaintiff took when defendant failed to sign the form requested by plaintiff acknowledging that he held only a month-to-month tenancy. In his answer, however, defendant alleged that plaintiff knew of the execution of the letter before it purchased the property, and respondent in its brief contends that ''in no event should defendant attempt to hold an innocent party who has relied upon a written document prepared by his own attorney.'' We cannot agree with this contention. On the contrary, far from affording grounds for the purchaser to believe that the property could be acquired free of a leasehold, the letter constituted a warning and notice of defendant's claims which the plaintiff disregarded at its own risk.

It must be held, therefore, that the trial court erred in directing a verdict for the plaintiff and in rejecting proffered testimony of defendant's wife and employee as to conversations with Fleishman. Defendant was entitled to have his cause submitted to a jury on the issues of whether or not there

was an oral lease or promise to lease, and whether he took possession and made improvements in reliance upon such lease or promise.

The attempted appeals from the order directing a verdict, from the verdict, and from the order denying the motion for a new trial are dismissed. The judgment is reversed and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.