[Civ. No. 13667. First Dist., Div. One. Aug. 30, 1948.]

WILLIAM B. KAYE et al., Respondents, v. MAX MELZER, Appellant.

Stern & Grupp and Morris M. Grupp for Appellant.

Esmond Schapiro for Respondents.

WARD, J.—Plaintiffs sued upon an oral contract, described in their complaint as follows: "That on or about the 18th day of February, 1946, plaintiffs and defendant entered into an oral agreement, whereby defendant agreed to give plaintiffs a sublease and concession of [a portion of No. 327 10th Street, Richmond, California] . . . for a period of three years from the 1st day of April, 1946, to and including the 30th day of March, 1949, and whereby plaintiffs were to have the sole and exclusive right to conduct a retail shoe business therein, selling shoes, slippers, rubbers and all other types of footwear, and also a retail hosiery and children's ready to wear business, and whereby plaintiffs agreed to pay to defendant as rental for said sublease and concession an amount equal to 10% of the gross sales to be made by plaintiffs therein during said term, but in no event less than $200.00 per month"; that defendant agreed that the concessions which were in said premises on February 18, 1946, would continue to be operated; that defendant promised that he would sign a written agreement containing the aforesaid terms. The complaint sets forth that in connection with the making of said agreement, plaintiffs informed defendant that if said agreement was made, they would have to resign their respective employments in Portland, Oregon, and move to Richmond, California, and one of the plaintiffs would have to go East to buy a stock of shoes and other goods, and the other of plaintiffs would prepare said

premises, "and defendant, at the time said agreement was made and in connection with the making of said agreement, told plaintiffs to go ahead and carry out all of said plans and not to wait for the signing of the written agreement." It is alleged that plaintiffs did carry out the aforesaid plans, relying upon the agreement and defendant's statements; that they opened the store on April 8, 1946, paying defendant 10 per cent of gross sales; and that on May 29, 1946, they received notice to quit as of June 30, 1946, pursuant to which they surrendered possession on July 6, 1946. The items of damage alleged in the complaint include the loss of one month's earnings; the expense of moving to Richmond, buying stock and fixing up the store; the loss of $49,300 over the 34-month period for which the lease would have run, and the expense in moving and improving another location in Richmond. These items totaled $55,705.

In addition to denying the above allegations, the answer set up among other defenses, Civil Code, section 1091. By his fifth separate defense, defendant alleged that the parties entered into an oral agreement under which defendant agreed to permit the plaintiffs to operate a shoe concession for so long a period of time as defendant occupied the premises; that when defendant served a notice to quit on May 28, 1946, plaintiffs claimed that defendant had breached his agreement with them; that it was agreed that plaintiffs "would release the defendant from all liability by virtue of any breach of the agreement referred to in plaintiffs' complaint provided he, the defendant, was instrumental in securing for the plaintiffs another fit location for them," and that defendant was instrumental in securing 1029 MacDonald Avenue which plaintiffs are now occupying.

The trial court found "That on or about the 18th day of February, 1946, plaintiffs and defendant entered into an oral agreement, whereby defendant agreed to give to plaintiffs the right to occupy for a period of three (3) years from April 1, 1946, to March 30, 1949, [the store described in the complaint] . . . and whereby plaintiffs agreed to pay to defendant as rental . . . 10% of the gross sales . . . but in no event less than $200.00 per month, and whereby defendant also agreed with plaintiffs to maintain and operate or cause to be operated during all of said period all of the concessions which were in said premises on said 18th day of February, 1946. That at said time and as a part of said agreement, defendant agreed to sign a written agreement containing the aforesaid

terms, and that plaintiffs had such an agreement prepared but defendant failed and refused to sign the same . . . in connection with the negotiations between plaintiffs and defendant which resulted in said agreement, plaintiffs informed defendant that if said agreement were made they would have to resign their respective employments and would have to move with their families from Portland to Richmond, California, and plaintiff, William B. Kaye, would have to go East to buy a stock of shoes and other goods for said store, and plaintiff, Abe Miller, would have to perform such services as were necessary to get said portion of said store ready to open, and defendant at the time said agreement was made and in connection with the making of said agreement, told plaintiffs to go ahead and carry out all of said plans and that he would sign such written agreement later when it was prepared and submitted to him.''

In accordance with the allegations of the complaint, it was found that by virtue of a notice to quit served on plaintiffs on May 29, 1946, they surrendered possession to defendant on July 6, 1946. The heretofore quoted allegations of the answer which set up an accord and satisfaction were found to be not true.

The court further found that plaintiff William B. Kaye was obliged to expend the sum of $227, and that plaintiff Abe Miller was obligated to expend the sum of $200, in moving their respective families from Portland to Richmond in order to put themselves in a position to occupy the premises; that plaintiff William B. Kaye spent one month, commencing about March 4, 1946, in making a trip East to buy stock and in moving his family, thereby being deprived of earnings in the sum of $700 for said month; that plaintiff Abe Miller spent one month, commencing about March 8, 1946, in moving and in fixing up the premises, thereby being deprived of earnings in the sum of $400 for said month, and that defendant had paid none of said sums, or any part thereof, to plaintiffs or either of them. It has been stipulated on this appeal that the sum of $128.10 covering plaintiff Abe Miller's expenses in moving furniture from Portland to Richmond which was allowed by the court may be deemed included in the findings.

The court concluded ''That defendant breached said oral agreement between plaintiffs and defendant, and that defendant is estopped to plead the statute of frauds, and that solely by virtue of said breach plaintiffs have been damaged by

defendant in the total sum of $1655.10, no part of which sum has been paid by defendant to plaintiffs, or either of them, and that plaintiffs are entitled to have judgment against defendant in said sum of $1655.10, together with interest thereon at the rate of 7% per annum from July 6, 1946, until paid, and for their costs of suit herein incurred.'' Judgment was entered accordingly. Defendant's motion for a new trial was denied, and this appeal was taken.

There is substantial evidence in support of the trial court's findings. Plaintiff Kaye testified that he met the defendant on January 29, 1946, at which time defendant told him he had a lease on No. 327 10th Street for around three years. At the time Kaye was earning $700 a month in Portland, Oregon. Kaye discussed the matter of a sublease with plaintiff Miller, who was then earning $400 a month in Portland, Oregon. After communicating with defendant by mail and by telephone, the plaintiffs traveled to Richmond, California, where they had a meeting with defendant on or about February 18, 1946. Plaintiff Kaye testified that defendant agreed that plaintiffs open the first of April, that ''we had three years to go, and that we were to be a concession at 10% of the gross and $200.00 a month guarantee.'' Defendant agreed to sign a writing containing those terms. Plaintiff Miller similarly testified as to the terms agreed to by defendant. Plaintiffs returned to Portland where they discussed the matter with their wives. Kaye telephoned defendant from Miller's house to tell him they had decided to accept his offer and were mailing him a copy of the lease containing the above-mentioned terms for him to sign. A copy of the lease and $200 were mailed to defendant. Plaintiffs also testified to a subsequent telephone call to defendant, on or about February 20, 1946, in which defendant assured them that they should go ahead with their plans to give up their positions in Portland around March 1, 1946, and for Kaye to start on a buying trip, as he would sign the agreement. Kaye testified that he began his trip by calling on defendant in Richmond and inquiring why the agreement had not been signed. Defendant told him, ''don't worry about it; everything is all right.'' March 6, 1946, Miller arrived in Richmond to prepare the premises. About March 18, 1946, while Kaye was on his buying trip, defendant suggested to Miller that plaintiffs consider taking a lease of the entire premises, instead of the sublease previously considered. Kaye testified that when he returned from his buying trip he asked defendant about a rumor that defend-

ant's lessor was planning to build on the property. Defendant replied that his lessor would not be able to build for two years—"You are worrying too much; open up and do business and everything will be all right." Kaye further testified that he asked defendant about the written agreement and about the absence of the concessionaires who had been there in February, to which defendant replied that the agreement "is somewheres in my store" and that he thought some of the concessionaires would be back. The store opened on or about April 6, 1946. About two weeks later, Kaye told defendant that since he was holding $1,200 to $1,500 a week as receipts, there was no use of his holding the $200 which had been mailed to him; hence defendant returned $200 to plaintiffs.

The fact that defendant did not intend to perform according to the terms of the oral agreement of February 18, 1946, is brought out by evidence—including defendant's testimony under Code of Civil Procedure, section 2055—that defendant received $5,000 from his lessor upon the execution of an agreement entitled, "Cancellation of Lease and Mutual Release," dated April 17, 1946. Defendant subsequently told plaintiffs that he had taken $5,000 from his lessor "to get out of here." On May 29, 1946, defendant caused to be served on plaintiffs a notice to quit on June 31, 1946. Pursuant to this notice they vacated the premises in question on July 6, 1946.

 Defendant contends, as he did in the trial court, that plaintiffs' action is for breach of an oral agreement to execute a sublease. The trial court, however, found that defendant breached "an oral agreement, whereby defendant agreed to give to plaintiffs the right to occupy" for three years the premises described in the complaint, and "to sign a written agreement containing the aforesaid terms." As such findings are supported by substantial evidence, they are binding upon this court. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]; *Fackrell* v. *City of San Diego*, 26 Cal.2d 196, 207 [157 P.2d 625, 158 A.L.R. 625]; *Barham* v. *Khoury*, 78 Cal. App.2d 204, 211 [177 P.2d 579].) The fact that possession was given under the agreement which was for a stated rent and a particularly designated term indicates that it was the intention of the parties to make a present leasing and not a mere agreement to execute a lease as defendant contends. (*Cheney* v. *Newberry & Co.*, 67 Cal. 126 [7 P. 445]; *Pacific Improvement Co.* v. *Jones*, 164 Cal. 260 [128 P. 404].)

■ Although both an oral agreement to make a written lease and an oral lease with a further or incidental agreement that it shall be put in writing come within the statute of frauds (I Tiffany on Landlord and Tenant, 383; Jones on Landlord and Tenant, 182-186; Civ. Code, §§ 1091, 1624(4); Code Civ. Proc., § 1971), in the former case only the making of the writing can execute it, whereas in the latter the subject of the agreement is the act or fact of present leasing, and its subsequent reduction to writing is incidental only. (Jones on Landlord and Tenant, 199-200.) ■ Hence, in the present case, defendant's breach of the oral agreement occurred when defendant caused plaintiffs to surrender possession, not when defendant failed to execute a written lease. The fact that the trial court ordered interest to run from July 6, 1946, is indicative of its determination that defendant's liability dated from the time plaintiffs surrendered possession.

■ There is no merit to defendant's contention that the lower court erred in concluding that he was estopped to plead the statute of frauds. Ever since the case of *Seymour* v. *Oelrichs*, 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154], it has been the law in California that the equitable principle of estoppel applies to every case in which the statute of frauds is invoked. (*Keller* v. *Richbart*, 130 Cal.App. 296 [20 P.2d 55]; *Beverly Hills Nat. Bank* v. *Seres*, 76 Cal.App.2d 255 [172 P.2d 894].) Briefly stated, this principle provides that a defendant will be estopped to set up the bar of the statute wherever he has represented, by his words or conduct, that he proposes to stand by the oral agreement of the parties, and the plaintiff, in reliance thereon, has changed his position. (*Seymour* v. *Oelrichs, supra*; *Le Blond* v. *Wolfe*, 83 Cal.App. 2d 282, 286 [188 P.2d 278].)

■ In the present case, after the making of the oral agreement on February 18, 1946, defendant repeatedly told plaintiffs to go ahead with their plan to give up their positions in Portland the first of March, to move their families to Richmond, to buy merchandise, and to "open up and do business and everything will be all right." Plaintiffs did so in reliance upon these statements. The fact that they were not misled into believing that a written lease was not necessary, as was the case in *Vierra* v. *Pereira*, 12 Cal.2d 629 [86 P.2d 816], is immaterial. They relied upon defendant's representations that he would abide by the terms of the oral agreement, hence he is estopped "from relying upon the statute of frauds to sup-

port a claim that no valid [3-year] lease had been entered into.'' (*Beverly Hills Nat. Bank* v. *Seres, supra,* p. 261.)

*Paul* v. *Layne & Bowler Corp.,* 9 Cal.2d 561 [71 P.2d 817], upon which defendant relies, may be distinguished as involving an oral agreement to execute a lease, rather than an oral agreement for a present leasing. Upon the facts of that case, instead of invoking the doctrine of estoppel and awarding damages for the breach of the oral agreement to execute the lease, the Supreme Court limited recovery to the extent of the defendant's unjust enrichment.

In the present case the trial court properly concluded. that plaintiffs' recovery need not be limited to the return of any benefits received by the defendant. In the case of an agreement for a present leasing, ''where the landlord has actively evicted the tenant, or refused to give him possession, recovery may be had at once for the value of the unexpired period of the lease, that is, the difference between the promised rent and the rental value of the term, or the difference between the contract price and the market price.'' (5 Williston on Contracts, p. 3913.) Although such recovery was prayed for in the complaint herein, it was not allowed by the trial court. Damages were awarded in an amount equal to plaintiffs' moving costs plus one month's loss of earnings. *Schnierow* v. *Boutagy,* 33 Cal.App. 336 [164 P. 1132] and *Douglass* v. *Guardian Holding Corp.,* 132 Cal.App. 585 [23 P.2d 80], are authority for sustaining an award for ''loss of time and expense of removal'' where the lower court, as here, found that such items constitute a detriment proximately caused by defendant's breach of a leasing agreement. (See Jones on Landlord and Tenant, 174-175.)

Defendant contends that because the evidence shows that plaintiffs' present location on MacDonald Avenue in Richmond is more profitable than that at the 10th Street store, it cannot be said that they suffered any damages in moving from Portland to Richmond and in devoting the month of March to preparing for doing business in Richmond. Plaintiffs' answer that the evidence also shows that defendant agreed to have all concessions in operation in the 10th Street store which would attract additional business for plaintiffs, but defendant never had the concessions in operation during the three months plaintiffs occupied the 10th Street store, hence no comparison between the two locations can be made. It is apparent that defendant's argument is such as would be more properly addressed to a trial court. There is abundant evidence that

plaintiffs gave up their positions in Portland and moved to Richmond in reliance upon the oral agreement of February 18, 1946, and that defendant breached said agreement by causing plaintiffs to surrender possession on July 6, 1946. It cannot be said that as a matter of law the trial court erred in concluding that plaintiffs were damaged by defendant in the total sum of $1,655.10.

The order denying defendant's motion for a new trial being nonappealable, the appeal therefrom is dismissed. (*Paul* v. *Layne & Bowler Corp., supra,* p. 566.)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.