[Civ. No. 15903.   First Dist., Div. One.   Aug. 23, 1954.]

MAX E. MANIG, Appellant, v. WILSON G. BACHMAN
et al., Defendants; H. GLENN LAWLER, Respondent.

Suren Toomajian and J. Elwood Andresen for Appellant.

Benjamin D. Frantz, William E. Dopkins and Bronson, Bronson & McKinnon for Respondent.

PETERS, P. J.—Max E. Manig, claiming to be the owner of certain improved real property in Oakland, brought this action to quiet his title to the property, naming several defendants as claimants of an adverse interest therein. The only defendant to answer was H. Glenn Lawler. The other defendants either were not served or their defaults were taken. Lawler denied that Max Manig had any lawful claim to the property, and averred that he, Lawler, owned the property and requested that his title thereto be quieted. He pleaded the source of his title in detail. From a judgment quieting Lawler's title Max Manig appeals.

The underlying facts are not substantially in dispute. Max Manig is of foreign extraction and speaks and writes English with some difficulty. He has two adult sons, Paul and Ernest, who, under his direction, have assisted their father in his business transactions. On March 11, 1939, Max Manig, under the name of "John Aal" acquired title to the real property here involved, then unimproved. Why an assumed name was used, other than that "Aal" was a "nickname" of appellant, does not appear. Max caused the property to be improved by the erection of apartments, the building permit being taken out in the name of Paul. Apartments were rented to tenants whose rental payments Max collected. He also paid all expenses in connection with the property. Ernest and his wife were tenants from December 13, 1949, until January of 1951.

On April 30, 1947, Max, under the name of John Aal, deeded the property to Ernest, who, on the following day, May 1,

1947, conveyed the title back to his father under the name of Max Manig. Ernest recorded his deed from his father on October 21, 1949, while Max did not record his deed until February 15, 1952. Max testified that for many months prior to February 15, 1952, this deed had been in the hands of his then attorney, that he frequently requested that attorney to record the deed but the attorney failed to do so, and that he finally took the deed from his then attorney and recorded it himself. Thus, record title to the property was in the name of Ernest Manig from October 21, 1949, until February 15, 1952. But it is not disputed that actual title was in Max at all times after March 11, 1939, either under the name of John Aal or Max Manig, except for one day, April 30, 1947, when title was in Ernest. Under these facts the property, during the year 1951, belonged to Max, but the record title was in Ernest.

Respondent Lawler's claim to the property is based on the following facts: In 1951 Glen Pritchett, named as a defendant in the instant suit but who defaulted, secured a municipal court judgment against Ernest. Pursuant to a writ of execution issued on that judgment the sheriff, on December 11, 1951, sold the property here involved to Pitchett and delivered to Pritchett a sheriff's certificate of sale, which was recorded December 14, 1951. On the date of the sheriff's sale the property appeared as of record in the name of Ernest.

In the meantime, the respondent Lawler had attached the property and then secured a judgment against Ernest. The lien of Lawler was subsequent in time to the lien of Pritchett. As a junior encumbrancer Lawler, on February 8, 1952, redeemed the property from Pritchett, the certificate of redemption being recorded February 18, 1952.

There is some other pertinent evidence. On and after June 9, 1944, the electric company had billed Paul Manig for the gas and electric bills. From 1939 on, Max paid all expenses in connection with the property, including the taxes assessed against it. After 1939 the taxes were billed to John Aal, Ernest Manig or to Max Manig. Lawler had the taxes assessed to him for the 1952-1953 fiscal year. Shortly after he had redeemed the property Lawler tried to collect the rents from the tenants. This resulted in the filing of this suit, on March 6, 1952.

The complaint alleges that Max is in "actual possession" of the property; that he has been for more than five years; that he has paid the taxes for over five years; that he owns

the property; that defendants claim some interest in it, and that such claims are without merit.

The trial court found the facts substantially as above set forth, and, in addition, found: "That plaintiff Max Manig is not in possession" of the property in question; that he "has not, by himself, or by his predecessors in interest or otherwise, been in the actual, exclusive, adverse, or other possession of said real property continuously or otherwise for five years or any other period of time prior to the filing of his complaint herein." The court also found that at the time of the sheriff's sale to Pritchett the latter "did not have any notice of any right, title, interest, or claim of or by plaintiff Max Manig," that Pritchett was then a "bona fide and innocent purchaser for a valuable consideration," that Pritchett then became the owner of the property, as against Max, and that Lawler, by virtue of his redemption, succeeded to the interest of Pritchett, and is now the owner of the property subject to the rights of redemptioners.

It should be mentioned that Pritchett, although named and served as a defendant, did not appear in the action, nor did he testify. He permitted a default to be entered against himself.

It is apparent that, by the judgment, property actually owned by appellant has been used to pay the debts of Ernest. There is no evidence that Pritchett or Lawler advanced credit to Ernest in reliance upon the fact that record title to the property was in Ernest, or that they knew of that fact when credit was extended. There are situations in which a judgment creditor legally may secure such a windfall, but before he may thus collect his debt from property not owned by the judgment debtor he must be in the position of a bona fide purchaser, that is, have no knowledge, actual or imputed, of the true owner's rights.

The basic contention of appellant is that neither Pritchett nor Lawler were bona fide purchasers; that he, the appellant, was in actual possession of the property through his tenants long prior to and at the times that the property was sold to Pritchett and redeemed by Lawler; that there is no evidence that Pritchett or Lawler made any investigation of the rights of the possessors; that Pritchett and Lawler, as a matter of law, are chargeable with notice of the rights of the possessors, and that, therefore, the finding that Pritchett was a bona fide purchaser for value is unsupported by the evidence. Under such circumstances, it is urged, the execution purchaser and

the redemptioner took subject to the legal rights of appellant. We agree with these contentions.

It is not entirely clear as to what the trial court intended to find on the vital issue of whether appellant was or was not in possession of the property at the time of the execution sale to Pritchett. The only finding on the issue is No. 3. It is in the form of a negative reiteration of an allegation of the complaint. The finding is that "Max Manig is not in possession of all or any portion" of the real property in question, describing it, and that "plaintiff has not, by himself, or by his predecessors in interest or otherwise, been in the actual, exclusive, adverse, or other possession of said real property continuously or otherwise for five years or any other period of time prior to the filing of his complaint herein." A reading of this finding in its context indicates that it was probably intended as a finding to negative the claim of adverse possession pleaded in the complaint and was not intended to constitute a finding that appellant was not in possession of the property at the time of the execution sale to Pritchett on December 11, 1951. As part of a finding on the issue of adverse possession the finding is unquestionably correct,* and appellant has now abandoned all claims based on adverse possession. But if this is the meaning of the quoted finding, then the trial court failed to find on the crucial issue as to whether or not appellant was in notorious possession of the property at a time when such possession would have put the execution purchaser on notice of the rights of such possessor. The court did find that Pritchett was a bona fide purchaser for value. Perhaps this finding, by implication, amounts to a finding that appellant was not in possession of the property under such circumstances as would require the execution purchaser to inquire. However, whether a finding of possession on December 11, 1951, was made, or was made by implication, or was not made at all, the judgment must be reversed. If not made, the court failed to find on a crucial and vital issue. If made or implied, such finding would be not only unsupported, but would be contrary to the uncontradicted evidence. It is undisputed that appellant acquired title to the property in 1939 under the name

*Ernest had legal title for one day—April 30, 1947. The present action was filed March 6, 1952. Thus, suit was filed some 55 days before the five-year period required for adverse possession had run. During the period prior to April 30, 1947, Max Manig, under the name of John Aal, was the legal and record owner of the property. During that period there was no hostile holding by Max Manig, without which there can, of course, be no adverse possession.

of John Aal. Appellant improved the property, taking the building permit for convenience in the name of Paul. After the construction of the apartments it is undisputed that appellant thereafter paid all expenses in connection with the property, and collected the rents from the tenants until interrupted by respondent sometime after February 8, 1952. While Ernest had been a tenant of one of the apartments, he moved out in January of 1951 and his wife moved out in March of that year, months before the date of Pritchett's execution sale on December 11, 1951. While the utilities bills were in the name of Paul, this was done because appellant was sick and he allowed Paul to help him. Paul admittedly had or claims no interest in the property. Up to 1950-1951 taxes were assessed to appellant under the name of John Aal, for 1951-1952 they were assessed to Ernest but paid by appellant, and in 1952-1953 they were assessed to respondent.

Thus, there can be no doubt that appellant owned the property and, through his tenants, was in actual and notorious possession of the property at the date of the Pritchett execution sale and until after the Lawler redemption. Under the evidence, appellant had actual title to the property either as John Aal or Max Manig from March 11, 1939, until after respondent redeemed, except for one day—April 30, 1947— when Ernest had title. All during these periods the appellant was in control and possession of the property through his tenants from whom he collected rents, and paid all the bills in reference to the property personally or through Paul, but always with his own money. But from October 21, 1949, to February 15, 1952, record title was in Ernest.

The failure to find, or the erroneous finding, on this issue of possession on December 11, 1951, was a most serious error. If appellant, through his tenants, was in actual and notorious possession of the property on December 11, 1951, and the uncontradicted evidence shows that he was, in the absence of circumstances not here found or shown to exist, Pritchett was chargeable with notice of the rights of the possessor who was a stranger to the record title. ■ It is conceded law that Pritchett as a purchaser at an execution sale is governed by the same rule as purchasers generally. ■ It has been the law for many years that "the possession of the tenant is notice of his landlord's title; that is to say, such possession is sufficient to put a person dealing with the property upon inquiry; and the law will charge him with notice of all those facts which he might have ascertained had he pursued the

inquiry with proper diligence." (*White* v. *Rosenstein*, 8 Cal. App.2d 217, at p. 223 [47 P.2d 358], quoting with approval from *O'Rourke* v. *O'Connor*, 39 Cal. 442, at p. 446; see also *Beverly Hills Nat. Bank & Tr. Co.* v. *Seres*, 76 Cal.App.2d 255 [172 P.2d 894]; *Follette* v. *Pacific L. & P. Corp.*, 189 Cal. 193 [208 P. 295, 23 A.L.R. 965]; *Scheerer* v. *Cuddy*, 85 Cal. 270 [24 P. 713]; *Pell* v. *McElroy*, 36 Cal. 268. See cases collected 25 Cal.Jur. p. 841, § 286.) ▆ It is equally well settled that where a person who is a stranger to the record title of the vendor is in possession, the purchaser is under a duty to make inquiry of such stranger's rights, and failure to do so deprives him of the status of bona fide purchaser. (*Hunter* v. *Watson*, 12 Cal. 363 [73 Am.Dec. 543]; *Pell* v. *McElroy*, 36 Cal. 268; *Basch* v. *Tidewater etc. Co.*, 49 Cal. App.2d Supp. 743 [121 P.2d 545]; *Three Sixty Five Club* v. *Shostak*, 104 Cal.App.2d 735 [232 P.2d 546].) The cases cited by respondent are not contrary to those above cited. They all involved factual situations where the possession of the occupant was ambiguous or consistent with ownership by the record owner, such as where the execution is against a husband, the record title owner, both husband and wife are in possession, but the wife possesses an undisclosed secret interest. (*Riley* v. *Martinelli*, 97 Cal. 575 [32 P. 579, 33 Am. St. Rep. 209, 21 L.R.A. 33]; *Pepin* v. *Stricklin*, 114 Cal.App. 32 [299 P. 557].) In such cases the execution is valid.

One of respondent's major contentions is that the case was tried on but one theory, that is, that appellant raised only the issue that he had title by adverse possession, and that the issue of whether Pritchett or Lawler were bona fide purchasers was never presented to or considered by the trial court. It is urged that appellant has attempted to raise this issue for the first time in his reply brief on this appeal. Respondent is in error. While the complaint, being in general form, does not directly disclose that appellant claimed title other than by adverse possession, the trial court did find that Pritchett was a bona fide purchaser, which is some indication that the trial judge believed that the issue was involved. The case was tried informally and without a clear delineation of the issues. But whether or not Pritchett was a bona fide purchaser was necessarily inherent in the case. Evidence, already set forth, of the possession of appellant was introduced without objection. Moreover, the record has been augmented to include the opening statements and closing arguments of counsel made to the trial court. An examination of the open-

ing statement of appellant's counsel shows that he devoted the major portion of that argument to a discussion of the point that he expected to prove that appellant was in possession and that Pritchett was not a bona fide purchaser. This was made equally clear in counsel's closing argument. The point was raised in appellant's opening brief, and in his closing brief he abandoned the adverse possession point completely and urged only the issue under discussion. A fair examination of the record discloses, therefore, that the issue was involved.

In view of the necessity for a new trial some mention should be made of other points discussed by the parties. Respondent may prevail if he can produce substantial evidence believed by the trial court that either he or Pritchett were bona fide purchasers. Respondent has succeeded to Pritchett's title. If Pritchett was a bona fide purchaser he got good title and the redemption by respondent would clothe respondent with the rights of Pritchett. (See cases collected 11 Cal.Jur. p. 111, § 59.) However, the respondent, as a subsequent grantee, in order to be protected as a bona fide purchaser and to prevail over the unrecorded deed must assume the burden of proving lack of notice. (*Wilhoit* v. *Lyons,* 98 Cal. 409, 413 [33 P. 325] ; *Bell* v. *Pleasant,* 145 Cal. 410, 412 [78 P. 957, 104 Am.St.Rep. 61] ; *James* v. *James,* 80 Cal.App. 185, 193 [251 P. 666] ; *McLane* v. *Storr,* 75 Cal. App.2d 459, 464 [171 P.2d 534].)

It should also be mentioned that the trial court made a general finding that appellant was estopped from denying that title was in respondent. No facts are found to sustain such an estoppel, none are argued in the briefs, and no sufficient facts to sustain that finding appear in the record. The negligence of appellant, if any, in failing to record his deed did not remove the duty on the purchaser from making inquiry of those in possession. If any other facts that would support an estoppel exist they may be inquired into on the new trial.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 20, 1954.