| 82   621<br>| 97   294

---

[No. 13129.   Department Two. — January 29, 1890.]

## ISIDORE DREYFUS, APPELLANT, v. ANTON HIRT, RESPONDENT.

BONA FIDE PURCHASER — RECORD OF CONVEYANCE—POSSESSION AS NO-
TICE OF UNRECORDED LEASE — BURDEN OF PROOF — EJECTMENT. —
The burden of proof rests upon one in possession under an unrecorded
lease, who seeks to avoid the protection given by section 1214 of the
Civil Code to a *bona fide* purchaser for value, whose conveyance is first
duly recorded, to show that at the time of the purchase he was in the
open, notorious, and exclusive possession of the premises in controversy;
but if he shows such a possession not consistent with a former lease of
record, which covered only a portion of the premises purchased, it is
sufficient to put the purchaser on inquiry, and the latter is chargeable
with actual notice of the terms of the unrecorded lease under which

such possession of the remainder of the premises was held, if no inquiry as to the tenant's right of possession was pursued with proper diligence; and he cannot maintain an action to eject the tenant from any part of the premises covered by the unrecorded lease before the expiration of his leasehold interest.

LANDLORD AND TENANT — GRANT OF REVERSION — NOTICE TO TENANT — PAYMENT OF RENT TO GRANTOR BEFORE MATURITY. — While the grantee of the reversion is entitled to receive rent without attornment, the tenant is protected in payment of rent to his original landlord before he receives actual notice of the grant of the reversion; and this protection applies to rent paid in advance to the landlord before it falls due, though it would fall due after the grant of the reversion, if no notice of the grant is given by the grantee to the tenant before the time when the rent so paid became due.

ID. — PROOF OF NOTICE — RELEASE REFERRING TO GRANTEE. — The execution of a release by the tenant, referring to the purchase by a grantee of the reversion, if executed at a date subsequent to the time when rent paid to the lessor became due, is insufficient alone to show such knowledge of the purchase as to charge the tenant with payment to the purchaser of rents which accrued before the date of the release.

ID. — GRANT OF PART OF REVERSION — APPORTIONMENT — RIGHT OF LESSOR TO COLLECT RENT. — When there is no agreement for an apportionment of rent between a lessor and his grantee of a part of the reversion, the lessor, it seems, is entitled to collect the whole rent, even after notice of the grant. He may sue for the whole, and leave it to the jury to determine the apportionment between himself as lessor and his grantee of part of the reversion.

ID. — SURRENDER OF PART OF LEASE. — An agreement to surrender a part of the leased premises for the purpose of giving a clear title to the purchasers of such part cannot affect the rights of a purchaser from the lessor of another part of the premises which are expressly reserved from the surrender, such purchaser being no party to the agreement. Such surrender of part of the lease does not have the effect to cancel the whole lease.

APPEAL from a judgment of the Superior Court of Santa Barbara County.

The facts are stated in the opinion.

*Jarrett T. Richards,* for Appellant.

*B. F. Thomas,* for Respondent.

GIBSON, C. — Ejectment; judgment for defendant. Plaintiff appeals on the judgment roll, which contains a bill of exceptions.

Defendant admitted by his answer that the plaintiff was the owner of the premises in dispute, and that he, defendant, had possessed and occupied them, and averred that his possession and occupation thereof were pursuant to two leases granted to him by the grantor of plaintiff. From the findings it appears that while one Hope was the owner in fee of 290 acres of the rancho Las Positas, in the county of Santa Barbara, he made two leases to the defendant. The first was executed on the 3d of October, 1885, and recorded on the fourteenth day of the same month, and demised certain land, including about one half of the land in dispute, for the term of five years from the first day of November, 1885, at the annual rental of $375, $250 of which was to be paid in advance. The second lease was executed on December 1, 1885, for the same term, commencing at the same time, and included all the land claimed by plaintiff, together with certain other land, and was not recorded until the twelfth day of October, 1887, six months after plaintiff received his conveyance from Hope. On the 1st of November, 1885, or soon thereafter, the defendant entered upon the land described in both leases, and on that part of the land not included in the lease of October 3, 1885, placed a dwelling-house, barn, stable, and corn-crib thereon, and since said entry has exclusively occupied and cultivated the land described in plaintiff's complaint.

The respondent, on March 5, 1887, paid to Hope the rent in advance for all the land demised to him down to and inclusive of the first day of November, 1888, and the evidence shows that this rent was paid by respondent in good faith, at the solicitation of Hope.

Shortly after, on April 19, 1887, Hope sold and conveyed to plaintiff the land sought to be recovered by him, and his only title thereto was derived from Hope. Plaintiff, at the time he received his conveyance, had notice of the lease dated December 1, 1885. There are

other findings, to the effect that defendant did not oust plaintiff at any time, nor wrongfully withhold the possession of the land, nor damage the plaintiff by withholding the land, and that the value of the annual rents and profits of the land in dispute amounted to two hundred dollars.

Appellant contends that as the respondent's apparent possession of the premises was not inconsistent with the terms of the first lease, which was of record when Hope conveyed to him, that he was not bound to make any inquiry respecting such possession beyond what the record disclosed; and that as the lease of December 1, 1885, was not of record when he purchased, in good faith, from Hope, without actual notice of the lease, and placed his deed of record before the lease was recorded, that he could not be charged with notice of the lease, which, as against his subsequent conveyance, was void, under section 1214 of the Civil Code, which provides: "Every conveyance of real property other than a lease for a term not exceeding one year is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith, and for a valuable consideration, whose conveyance is first duly recorded."

In support of his contention, appellant claims that the evidence shows that the respondent only entered into and held the possession of the premises first demised to him, and which only embraced one half of the land subsequently purchased by appellant, and that therefore the fourth finding, wherein the court found that the respondent entered into and held the exclusive possession of the premises embraced within both leases, and placed structures upon that portion of the premises included in the second lease, but not included in the first, is contrary to the evidence; and that the seventh finding, wherein the court found that the appellant, at the time he purchased of Hope, had notice of the second lease, is also contrary to the evidence.

As respondent relied upon his unrecorded lease, it was at the trial incumbent upon him, in order to avoid the effect of section 1214 of the Civil Code, *supra*, to show that, at the time appellant purchased, he, respondent, was in the open, notorious, and exclusive possession of the premises in controversy; as such possession would, if proven, establish the fact that appellant had actual notice of respondent's leasehold interest in the premises, unless the appellant pursued with proper diligence, and without obtaining knowledge of such interest, the inquiry such a possession would impose upon him. (*Fair* v. *Stevenot*, 29 Cal. 486; *Smith* v. *Yule*, 31 Cal. 180; 89 Am. Dec. 167; *Thompson* v. *Pioche*, 44 Cal. 508; *Palmtag* v. *Doutrick*, 59 Cal. 154; 43 Am. Rep. 245.)

The evidence clearly shows that respondent entered into and exclusively occupied the whole tract, embracing the portion subsequently acquired by appellant, for a period of three years, covering the time appellant made his purchase. There does not seem to be any evidence to the contrary. As to the location of his buildings, the evidence is only a little less clear. The respondent says in one place that the house was upon the land described in the first lease, and again, he says it was upon the slope of the hill on the land embraced within the second lease, which was not included in the first, and upon that portion, as we understand it, which appellant subsequently bought. He is corroborated regarding his last statement by witness Cooper, a surveyor, familiar with all the land, and who was called for appellant, and testified that the first lease included only the valley land and one half of the land in dispute, and that the second lease included both valley and hill land; that there were two houses upon the land embraced in the last lease, one of which was on the Dreyfus tract, the premises in dispute. Witness Hirt, a brother of defendant, testified that his brother's house was on "the land between the hill and valley," and that his brother lived there three

years. Witness Williams testified: " I know where the defendant has been living for the last three years. I don't know the boundary of the land in controversy. Defendant's house is built on the slope of the hill; the hill sloped to the bottom, just at the foot of the hill." There was, therefore, ample evidence to justify the findings assailed.

The respondent, then, at the time of appellant's purchase, having had the exclusive, open, and notorious possession of the hill land, embracing one half of the Dreyfus place, with a house upon it, which made it a visible possession, and which was inconsistent with the first lease which was of record, was sufficient to put the appellant upon inquiry, and not having pursued it, he was properly charged with notice. (Civ. Code, sec. 19.) And the unrecorded lease was valid as to him by reason of such notice. (Civ. Code, sec. 1217.)

The appellant further contends that the respondent had, prior to the commencement of the action, forfeited his first lease by non-payment of rent; and proceeds as to the second lease upon the theory that as to him it was a nullity.

"Grants of rents or of reversions or of remainders are good and effectual without attornments of the tenants; but no tenant who, before notice of the grant, shall have paid rent to the grantor must suffer any damage thereby." (Civ. Code, sec. 1111.) This is a protection to the tenant who pays rent to his landlord before notice of the grant of the reversion. As we have seen from the findings, the respondent paid rent on both leases in advance of the time it became due, and prior to appellant's purchase, until and including the first day of November, 1888. On the first lease, according to its terms, the first annual rent, payable in advance, that became due after the purchase by appellant, was on November 1, 1887, for the ensuing year; and on the second lease, on the same date, for the year ending on

that date.   Now, as the appellant failed to give notice of his purchase to the respondent, the respondent, even if he was not, as claimed by appellant, justified in paying it in advance as he did, he would have been justified in paying on the first lease on November 1, 1887, a year's rent in advance, which would carry it up to the time he did pay for.   Also, upon the second lease, on the same date, for the year ending on that date.   The first time appellant brought the fact of his interest in the land claimed to the notice of the respondent was when he served a written demand upon him for the possession of the portion purchased by him one year, less a few days, after his purchase, during all of which time the respondent was in the exclusive and visible possession of the land.

There is a reference to the purchase of appellant, Dreyfus, in a release executed by respondent and his brother on the 17th of December, 1887.   But Dreyfus was not a party thereto, and the date is subsequent to the time when the rent above referred to became due, and therefore is insufficient alone to show knowledge of Dreyfus's purchase so as to charge respondent with the rents that accrued November 1, 1887.   Beside, as each of the leases covered other land in addition to one half of the land in dispute, it follows that the appellant only received a portion of the reversion affected by each lease, and consequently was not entitled to the whole rent reserved in each lease.   He and his grantor having failed to make, so far as the record shows, any apportionment of the rent, his grantor, as the lessor of respondent, would, it seems, be entitled to collect the whole of it, even after notice of a grant of a portion of the reversion, and could sue for the whole of it, and leave it to the jury to determine the apportionment between himself as lessor and his grantee of a portion of the reversion.   (1 Taylor on Landlord and Tenant, sec. 385; *Worthington v. Cooke*, 56 Md. 51; *Walter* v. *Munde*, 1 Jacob & W. 181.)

It is, therefore, evident that as all the rent which had accrued before the suit was brought had been paid to Hope, without notice of the sale of a portion of the reversion, and without any apportionment of the rent and notice thereof, the respondent was not in default.

Appellant further urges that the agreement between respondent and his brother as lessees, and Hope, their lessor, and Cowles and Redding as purchasers of a portion of the demised premises, for a surrender of the leases, and a release of a portion of. the premises pursuant to said agreement, expressly, however, excepting the portion sold to Dreyfus, canceled all the leases; and that the exception in Exhibit 4 was of no effect, as it was not provided for in Exhibit 3. But we fail to see how the appellant could derive any benefit from the transactions; they were designed to give a clear title to Cowles and Redding to that portion of the demised premises which they had purchased, and the appellant was not a party thereto, nor interested therein.

We therefore advise that the judgment be affirmed.

VANCLIEF, C., and FOOTE, C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the judgment is affirmed.