[Civ. No. 14526. First Dist., Div. One. June 14, 1951.]

THREE SIXTY FIVE CLUB (a Corporation), Respondent,
v. LOUIS K. SHOSTAK, Appellant.

Freed, Gebauer & Freed, Eli Freed, Emmett Gebauer and Scott Fleming for Appellant.

Theodore M. Monell and Ernest J. Torregano for Respondent.

AGEE, J. pro tem.—On August 29, 1941, the then owner, Bligh, of the four-story building located at the southeast corner of Market and Fremont Streets in San Francisco leased the second, third and fourth floors thereof to plaintiff's predecessors in interest for the purpose of conducting a night club. Clause 3 of the lease provided: "The Lessees hereby grant to the Lessor the option of leasing the second floor of said premises at any time during the term mentioned herein at a monthly rental that will not be in excess of one-third of the entire rental being paid by Lessees at the time said option is exercised." In June or July, 1943, the plaintiff went to Bligh and told him that it would like to construct six dressing rooms and a corridor along the westerly wall of the second floor, including the installation of a magnesite floor and ventilation equipment, but would not do so unless Bligh would waive his right to recapture the westerly half of the second floor. Bligh orally agreed to do so and plaintiff went ahead with the improvements, which cost approximately $10,000. For some reason not disclosed by the record, plaintiff caused the lease to be reorded on July 8, 1944. Nothing on the record disclosed the waiver. In July, 1945, defendant Shostak bought the build-

ing. He dealt with Bligh's agent, Bligh being in Europe with our military forces. Shostak did not know of the oral waiver. He relied upon the record title as disclosed by the title search ordered by him, the terms of the lease, a copy of which he read, and an examination of the premises. Shostak did not know who had caused the lease to be recorded. There is no showing that he relied upon the time of recordation. He observed that the entire third floor was occupied by the night club, the fourth floor was almost entirely vacant, and the second floor contained the 1943 improvements mentioned above, together with a rehearsal room and playroom, liquor storage space, a carpentry shop, small rooms for use in creating the "girl in a fishbowl" illusion, and incidental storage space. The expense required to move these facilities to the fourth floor would be substantial in amount. The only means of ingress and egress provided for in the lease was by means of elevators giving access to the Market Street entrance. In the latter part of 1942 and early part of 1943 there was constructed a stairway leading from the leased premises to Fremont Street. This was done to comply with fire regulations, the fire marshal having ordered the premises closed because of the lack of such additional exit. The cost of construction was shared by the plaintiff and Bligh. Shostak made no inquiry of the plaintiff or of Bligh's agent or anyone else concerning the rights of the plaintiff. On November 30, 1945, Shostak gave written notice of his election to recapture the second floor and demanded that plaintiff vacate. Thereupon plaintiff commenced this action against Shostak to have the rights of the parties declared. Shostak appeals from an adverse judgment which held that he was bound by the oral partial waiver of the recapture clause.

Appellant makes two contentions: (1) that the possession of the tenant night club, having been consistent with and explained by the record title, did not constitute notice of asserted rights outside of the record, and (2) that the tenant, having recorded its lease knowing that said lease contained a provision (clause 3) which had been waived in part, is estopped to assert said waiver as against appellant who purchased without knowledge thereof.

The trial court found that "defendant was not entitled to rely upon the recordation of the lease as evidencing the entire rights of the plaintiff in the premises, and that defendant by reasonable investigation could readily have discovered that

plaintiff was entitled to possession of the westerly half of the second floor of said premises occupied by it, and that the defendant's predecessor had waived his right and option to lease or recapture said portion of the second floor of said premises.''

Possession of real property by one other than the vendor is notice or evidence of notice to an intending purchaser sufficient to put him on inquiry as to the rights of the occupant unless under the peculiar circumstances of the case there is no duty to make inquiry. (25 Cal.Jur. 834-836.) An example of the exception to the general rule is where the possession is consistent with the record title and there are no circumstances which would indicate the need of inquiry. (*Smith* v. *Yule,* 31 Cal. 180 [89 Am.Dec. 167].) Where a tenant's possession extends beyond the premises covered by a recorded lease, an intending purchaser has a duty to inquire as to the tenant's rights not included in the lease. (*Dreyfus* v. *Hirt,* 82 Cal. 621 [23 P. 193].) If the circumstances as to possession are such as to put a purchaser on inquiry, he is chargeable with knowledge of all that a reasonably diligent inquiry as to the rights and claims of the occupant might have disclosed. (25 Cal.Jur. 836.) The circumstances of each case determine whether an inquiry should be made. This is ordinarily a question of fact. The recent case of *Basch* v. *Tidewater Associated Oil Co.,* 49 Cal.App.2d Supp. 743 [121 P.2d 545], discusses all of the foregoing principles.

The circumstances and inconsistencies relied upon by respondent are as follows: The stairway leading to Fremont Street from the night club was not a part of the demised premises, the lease having only included ''the exclusive right to the use of the elevators.'' The substantial improvements on the second floor made by the tenant were obviously recent and were peculiarly adapted to the use and operation of the night club on the third floor. It would seem unlikely that these improvements costing $10,000 would have been installed when at any time the landlord could have recaptured the second floor for not more than one third of $550 per month. Clause 3 is so worded that the trial court in its opinion held that a reading of it alone was sufficient to make it the duty of appellant to make an inquiry to find out if the option had been exercised or waived. The amount of rent to be paid by the landlord upon recapture of the second floor was uncertain, the lease providing it was not to be ''in excess of one-third'' of $550 per month. This was an additional circumstance

which should have excited inquiry as to whether an exact amount had been agreed upon.

For the foregoing reasons we believe that the trial court was correct in holding that there were sufficient circumstances and inconsistencies between the apparent possession of the tenant and the terms of the recorded lease to put upon the purchaser the duty of making a reasonable inquiry as to rights of the tenant not included in the lease.

■ Estoppel arising from the recordation of the lease is not available to appellant because his reliance upon the recorded lease alone was unreasonable. In other words, he had no right to so rely. "To warrant reliance, a representation must be such as would induce a reasonable man to act upon it." (10 Cal.Jur. 637-638.)

■ This case was submitted to the trial court on a stipulation as to the facts and contained the following provision: "That the court has, at the request of both parties and in their presence, examined the demised premises *as an aid to draw his conclusions from the evidence to be considered by him* in his determination of this matter." (Emphasis added.) Because of the wording we believe that the viewing of the premises did not constitute additional or independent evidence but merely permitted the trial court to better understand the evidence contained in the stipulated statement of facts.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.