[No. B038466. Second Dist., Div. Four. Sept. 27, 1989.]

GATES RUBBER COMPANY, Plaintiff and Appellant, v.
HARRY R. ULMAN et al., Defendants and Respondents.

COUNSEL

Greenberg, Glusker, Fields, Claman & Machtinger, Michael K. Collins, Munger, Tolles & Olson, Ronald K. Meyer and Susan E. Nash for Plaintiff and Appellant.

Bostwick & Ackerman and Lee B. Ackerman for Defendants and Respondents.

OPINION

**GEORGE, J.**—Appellant Gates Rubber Company appeals from a judgment which denied appellant specific performance of an unrecorded option agreement giving it the right to purchase certain property in the 20th year of a 25-year lease of that property from a predecessor-in-interest of Charles Ulman. The term of the lease commenced in 1963. Charles Ulman purchased the property in 1969. Appellant attempted to exercise the option in 1983. Respondents Harry R. Ulman and his wife Gisela Ulman are cotrustees of the testamentary trust established under the will of the late Charles Ulman, Harry Ulman's father.

Appellant contends (1) its possession of the property created a duty of inquiry as to all its rights in the subject property, including its option to purchase, and Charles Ulman's failure to investigate precludes his having the status of a bona fide purchaser without notice; (2) appellant's possession was inconsistent with "record title," even if that term is construed to include a lessee's recorded leasehold interest in the property; (3) the evidence does not support the trial court's finding that appellant had unclean hands, and that finding is erroneous as a matter of law; and (4) appellant is not estopped from obtaining the relief it requests by its failure to record the agreement giving it an option to purchase. For the reasons that follow, we affirm the judgment.

FACTS

On March 18, 1963, appellant's subsidiary, Gates Rubber Company Sales Division, Inc. (Gates Sales Division), leased from Louis Lesser Enterprises, Inc. (Louis Lesser), three acres of land located on Randolph Street in the City of Commerce, California. The written lease provided for a term of 20 years, from January 1, 1964, through December 31, 1983. The lease was a "triple net lease," which required appellant to pay the taxes, insurance, utilities, and other costs involved in maintaining the property. The lease

granted Gates Sales Division four successive five-year options to extend the term. On two occasions the lease was amended to increase the rent to its final amount of $4,132.50 per month. The lease made no reference to an option agreement for the purchase of the property, a written agreement which had been entered into by the same parties on the same date as the original lease. Neither the lease nor the written option agreement ever was recorded.

The written option agreement entered into by Gates Sales Division and Louis Lesser on March 18, 1963, as subsequently amended July 29, 1963, provided that Gates Sales Division had the right to purchase the property for $721,029 during the sixth year of the lease term, and a second option to purchase the property for $550,687 during the 20th year of the lease term.[1]

At the time they entered into the aforementioned lease and option agreements on March 18, 1963, Gates Sales Division and Louis Lesser additionally executed a short-form lease. This short form did not contain all the material terms of the lease but merely designated Louis Lesser as lessor and Gates Sales Division as lessee, identified the property and specified the length of the term, stated that the consideration was one dollar plus other valuable consideration, recited that Gates Sales Division had leased the premises from Louis Lesser "upon and subject to the terms, covenants, conditions and agreements more particularly set forth in a certain lease between Lessor and Lessee bearing even [sic] date herewith," and stated the referenced lease was the sole agreement of lease between the parties. This document made no reference to the agreement providing an option to purchase. The short form lease was recorded on September 6, 1963. With the consent of Louis Lesser, on August 1, 1963, Gates Sales Division assigned its entire interest in both the lease and the option agreement to its parent company, appellant, but neither assignment was recorded.

The terms of the lease required Louis Lesser to construct an 80,000 square-foot office and warehouse building according to the lessee's specifications. Pursuant to this provision, Louis Lesser obtained construction financing in the amount of a $525,000 loan maturing on January 15, 1984, and completed construction of the building in December 1963.

---

[1] David Zoraster, a real estate appraiser retained by appellant as an expert witness to analyze the reasonableness of the 1963 lease and option agreements, declared that the factors that made this type of transaction "work" included, among others, that the corporate tenant could deduct the amount of rental payments and still "control a property" through the fixed-price repurchase agreement. In the 1960's, the Internal Revenue Service (IRS) began to interpret such agreements as financing devices only and to disallow the rental payments as tax deductions. Zoraster's declaration did not make reference to appellant's failure to record the agreement.

Appellant entered into possession of the premises on January 1, 1964, and has occupied the property continuously since that date. During this period of possession, appellant has operated a warehouse and distribution center on the property for its rubber products. Appellant has made all rental payments required by the lease and has paid all taxes, insurance, and costs of repairs and maintenance. It was stipulated by the parties that appellant at all pertinent times has been in open and continuous possession of the property.

On December 27, 1966, Louis Lesser conveyed the property to United California Bank, which in turn conveyed it to Massachusetts Mutual Life Insurance Company in January 1968. In December 1968, the latter conveyed it to Western Orbis Company, a company owned by Louis Lesser. Several days later, Western Orbis Company conveyed the property to Fulton Investment Company. The escrow agreement and recorded grant deed from Western Orbis Company to Fulton Investment Company did not contain any reference to the option to purchase. The attorney for Fulton Investment Company possessed a copy of the option agreement in his office files. William Malat, an officer of Western Orbis Company, testified at a deposition he was certain he had advised Fulton of the option to purchase.

In November 1965, November 1966, and December 1967, appellant provided written "tenant offset" statements at the request of potential purchasers or lenders. In these documents, appellant stated the lease was not in default and claimed there were no offsets against rent. Appellant also noted in each document that it possessed an option to purchase the property.

On November 6, 1969, Fulton Investment Company conveyed the property to Charles Ulman for $633,163.25. Benton Cole was a real estate agent who represented Charles Ulman during the purchase of the property. Prior to the purchase, he provided Ulman with a written description of the property, including the lease and options to renew, but this document did not contain any reference to the option to purchase. The preliminary title report and eventual policy of insurance prepared for Charles Ulman by the title insurance company referred to the short-form lease and to the unrecorded lease, but not to the option agreement for the purchase of the property.[2] A "credit statement" prepared by Dun & Bradstreet setting forth a financial profile of appellant made no reference to the option agreement. The escrow instructions and grant deed for this conveyance did not refer to the option agreement. The grant deed was recorded on November 6, 1969. Fulton

---

[2] The title insurance policy also contained a disclaimer providing that the policy did not insure against loss or damage by reason of "Any . . . rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof."

Investment Company assigned the lease to Ulman and identified the lessee as Gates Rubber Company. Appellant also was identified in the escrow instructions.

Appellant did not receive any request for a tenant offset statement or any inquiry from Charles Ulman regarding appellant's rights before Ulman purchased the property, although it was customary for a purchaser to request such a statement. Appellant first received notice of Ulman's purchase on November 21, 1969, when Ulman sent appellant a letter requesting that future rent payments be made to him, and enclosing a copy of the assignment of lease.

Charles Ulman died on March 2, 1982, and in May of that year Harry Ulman was appointed special administrator and executor of Charles Ulman's estate, which included the property at issue. Pursuant to the terms of the option agreement, on August 29, 1983, appellant notified Harry Ulman in writing of appellant's exercise of the option to purchase the property for $550,687 and delivered to him the down payment of $55,068.70 required by the agreement. On September 15, 1983, Harry Ulman returned appellant's check uncashed and notified appellant that respondents would not comply with the option agreement or convey the property to appellant, asserting there was no evidence Charles Ulman was aware of the option when he purchased the property in 1969.

Harry Ulman declared he did not find any copy of the option agreement in his father's files pertaining to the property and prior to August 1983 had no notice of the existence of the option. Respondents' appraisal of the property estimated its worth at $2 million in 1983, apart from the leasehold interest. In an order filed by respondents in 1986 in connection with settling the estate of Charles Ulman, the value of the property was described as $525,000.

On November 1, 1983, appellant commenced the present action, seeking specific performance of the option agreement, declaratory relief, and damages. Respondents cross-complained for declaratory relief. The case was submitted to the trial court on the basis of stipulations relating to certain facts and documents.

In September 1988 the court issued a statement of decision in favor of respondents, finding appellant's possession of the property was open, notorious, exclusive, and visible at the time Charles Ulman purchased, but that this circumstance was insufficient to put Ulman on inquiry or to charge him with constructive notice of the unrecorded option agreement, because

appellant's possession was "entirely consistent with both the recorded title and the recorded lease."

The trial court also found that appellant had unclean hands, inferring that its failure to record the option to purchase was intended to avoid adverse tax consequences; had the IRS become aware that appellant eventually might own the entire fee, it would have disallowed the business deductions for appellant's rent.[3] The court found additionally that appellant was estopped from enforcing the option agreement because it had had the right and power to protect the option to purchase by recording it and had failed to do so. The court entered judgment in favor of respondents on September 27, 1988, and appellant timely appealed.

### DISCUSSION

### I

### *Standard of Review*

The case was tried on stipulated facts and documents and on additional declarations, portions of depositions, and the briefs of the parties. Where the facts are not in conflict or are stipulated, we are confronted solely with questions of law and may render our own conclusions and findings. (*Newman* v. *Franchise Tax Bd.* (1989) 208 Cal.App.3d 972, 977 [256 Cal.Rptr. 503]; *May Dept. Stores Co.* v. *City of Los Angeles* (1988) 204 Cal.App.3d 1368, 1373 [251 Cal.Rptr. 873]; *Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 894 [122 Cal.Rptr. 249].)

Nonetheless, where the facts in a case presented upon declarations are substantially in conflict, we must review them in a manner supporting the judgment. (*Barth-Wittmore Ins.* v. *H. R. Murphy Enterprises, Inc.* (1985) 169 Cal.App.3d 124, 133 [214 Cal.Rptr. 894].) Furthermore, "[t]o the extent that the court drew certain inferences from the evidence, . . . this evidence shall be viewed in the light most favorable to the judgment. [Citation.]" (*Newman* v. *Franchise Tax Bd., supra,* 208 Cal.App.3d 972, 977; *Ferris* v. *Los Rios Community College Dist.* (1983) 146 Cal.App.3d 1, 7 [194 Cal.Rptr. 16].)

In the present case, many, but not all, of the facts relating to the issue of notice were stipulated to or were not in conflict. Certain facts, for example

---

[3]The trial court determined that the initial lease and option-to-purchase agreement constituted an "arms-length" transaction consistent with real estate practices of the 1960's and that the seller had believed it would obtain a "healthy profit" at the end of the lease term as the result of the option.

those pertaining to the value of the property at various times, were in conflict. Moreover, the trial court drew inferences from the uncontradicted facts presented, for example appellant's motives in failing to record the option to purchase. Therefore, we view the evidence in the light most favorable to the judgment rendered by the trial court.

## II

*Appellant's Possession of the Premises in a Manner Consistent With Its Lease Did Not Give Constructive Notice of the Unrecorded Option to Purchase; Charles Ulman Was a Bona Fide Purchaser*

■ Appellant contends its open, continuous, exclusive possession of the premises, which was inconsistent with the vendor's record title, gave Charles Ulman constructive notice of the option agreement to purchase; and Ulman's failure to investigate precluded his being a bona fide purchaser.

Civil Code section 1214 provides in relevant part: "Every conveyance of real property, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, . . . in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless such conveyance shall have been duly recorded prior to the record of notice of action." The act of recording creates a conclusive presumption that a subsequent purchaser has constructive notice of the contents of the previously recorded document. (Civ. Code, § 1213; 2 Miller & Starr, Current Law of Cal. Real Estate (1977) Recording and Priorities, § 11:4, p. 11.)

In the present transaction, neither the lease nor the option-to-purchase agreement ever was recorded. The lease did not refer to the option agreement. (The short-form lease, which referred to the lease as being the exclusive agreement *of lease* between the parties but did not refer to the option agreement, was recorded in 1963.) Respondents' grant deed was recorded in 1969. Therefore, in order for appellant to prevail, Charles Ulman must be determined not to have been a bona fide purchaser.

■ "The elements of bona fide purchase are payment of value, in good faith, and *without actual or constructive notice of another's rights.* [Citation.]" (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 206, p. 411, italics added.) "The absence of notice is an essential requirement in order that one may be regarded as a bona fide purchaser." (*Basch* v. *Tidewater etc. Co.* (1942) 49 Cal.App.2d Supp. 743, 746 [121 P.2d 545].)

Civil Code section 1217 provides: "An unrecorded instrument is valid as between the parties thereto and those who have notice thereof." ▪ "[S]ince recordation is not essential to legal recognition of a property interest, but only affects its priority as against subsequent bona fide purchasers, an unrecorded option may be a valid property right. [Citations.]" ▪ ▪ ▪ ▪ (*Claremont Terrace Homeowners' Assn.* v. *United States* (1983) 146 Cal.App.3d 398, 408 [194 Cal.Rptr. 216].)[4] "Even though the prior instrument is unrecorded, and there is therefore no constructive notice from the record, a subsequent purchaser may nevertheless have *actual knowledge* or *constructive notice* of it, and if so will not be a bona fide purchaser." (4 Witkin, Summary of Cal. Law, *supra*, § 209, p. 412, italics in original.)[5]

The question arises whether an intending purchaser must inquire as to any rights a tenant might have by virtue of unrecorded documents where that tenant's possession is consistent with a recorded lease. ▪ We hold that where a tenant's possession is consistent with the terms of a recorded lease which does not refer to an additional unrecorded option to purchase, and there are no circumstances indicating the tenant has additional rights, the purchaser does not have a duty to inquire of the tenant as to any other rights the tenant may possess.

The constructive notice imparted by the recording of a document has been extended to charge an intending purchaser with a duty to investigate the rights afforded by an unrecorded document *referred to* in that recorded document. (*American Medical International, Inc.* v. *Feller* (1976) 59 Cal.App.3d 1008, 1020 [131 Cal.Rptr. 270]; see *Pacific Trust Co. TTEE* v. *Fidelity Fed. Sav. & Loan Assn.* (1986) 184 Cal.App.3d 817, 825 [229 Cal.Rptr. 269]; Annot., Recorded Real Property Instrument as Charging Third Party With Constructive Notice of Provisions of Extrinsic Instrument Referred to Therein (1979) 89 A.L.R.3d 901.)

An implication to be drawn from the foregoing authority is that where there is no such reference, the purchaser may rely on the recorded documents. "Clearly, a subsequent bona fide purchaser or encumbrancer is not bound by off-record agreements not referenced in the recorded documents . . . ." (2 Miller & Starr, Current Law of Cal. Real Estate, *supra* (1987 Supp.) § 11.4, p. 5, fn. 16.)

---

[4] An unexercised option to purchase contained in a lease is a covenant running with the land. (*Claremont Terrace Homeowners' Assn.* v. *United States, supra,* 146 Cal.App.3d 398, 406.) "Subsequent purchasers of property subject to an option who take with notice of its existence take subject to the right of the optionee to complete the purchase. [Citation.]" (*Ibid.*)

[5] Civil Code section 19 provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

In the present case, because the recorded short-form lease referred merely to the unrecorded long-form lease, of which Charles Ulman already had actual notice, and which did not itself refer to the option agreement, satisfaction of the duty to investigate appellant's rights pursuant to the long-form lease still would not have given Charles Ulman notice of the option to purchase.

Nonetheless, under certain circumstances notice to a subsequent purchaser of a prior interest may be implied from mere possession of the property; therefore, we next examine whether notice of the unrecorded option may be implied from appellant's possession. Possession of property by someone other than the vendor provides notice to an intending purchaser sufficient to put him on inquiry as to the rights, title, and interest of the occupant (*Claremont Terrace Homeowners' Assn.* v. *United States, supra,* 146 Cal.App.3d 398, 408; *Basch* v. *Tidewater etc. Co., supra,* 49 Cal.App.2d Supp. 743, 748), "unless under the peculiar circumstances of the case there is no duty to make inquiry." (*Three Sixty Five Club* v. *Shostak* (1951) 104 Cal.App.2d 735, 738 [232 P.2d 546].) The circumstances of each case dictate whether an inquiry should be made, a determination which ordinarily involves a question of fact. (*Ibid.*)

" 'The possession required to impart notice to a subsequent purchaser must be open, notorious, exclusive and visible, and *not consistent with the record title.*' [Citation.]" (*Claremont Terrace Homeowners' Assn.* v. *United States, supra,* 146 Cal.App.3d 398, 408, italics added; 4 Witkin, Summary of Cal. Law, *supra,* § 209, pp. 412-413.)[6] Such possession is not in itself notice but merely is evidence tending to prove notice, sufficient to put the purchaser on inquiry, and inquiry

---

[6]The general rule places the burden of proof upon a person claiming bona fide purchaser status to present evidence that he or she acquired interest in the property without notice of the prior interest. (*Bell* v. *Pleasant* (1904) 145 Cal. 410, 413-414 [78 P. 957]; *Alcorn* v. *Buschke* (1901) 133 Cal. 655, 657-658 [66 P. 15]; *Hodges* v. *Lochhead* (1963) 217 Cal.App.2d 199, 203 [31 Cal.Rptr. 879]; 2 Miller & Starr, Current Law of Cal. Real Estate, *supra,* § 11:28, p. 51.) Several cases have applied this standard where notice to the bona fide purchaser is implied from possession of the property. (See, e.g., *Claremont Terrace Homeowners' Assn.* v. *United States, supra,* 146 Cal.App.3d 398, 409; *Manig* v. *Bachman* (1954) 127 Cal.App.2d 216, 223 [273 P.2d 596].)

If the prior party claims an equitable rather than a legal title, however, the burden of proof is upon the person asserting that title. (*Bell* v. *Pleasant, supra,* 145 Cal. 410, 414-415; *Garber* v. *Gianella* (1893) 98 Cal. 527, 529-530 [33 P. 458]; 2 Miller & Starr, Current Law of Cal. Real Estate, *supra,* § 11:28, pp. 52-53.) In addition, several cases have held the burden of proof is upon a person claiming notice by possession to establish open, notorious, and exclusive possession inconsistent with record title. (*Dreyfus* v. *Hirt* (1890) 82 Cal. 621, 625 [23 P. 193]; *High Fidelity Enterprises, Inc.* v. *Hull* (1962) 210 Cal.App.2d 279, 281 [26 Cal.Rptr. 654]; *Pacific Fruit Exchange* v. *Schropfer* (1929) 99 Cal.App. 692, 694 [279 P. 170]; 2 Miller & Starr, Current Law of Cal. Real Estate, *supra,* § 11:55, pp. 86-87.) This latter rule should apply where, as here, a possessor asserts that notice of additional rights contained in an unrecorded, unreferenced document is implied from possession consistent with a recorded lease.

" 'does not become a duty when the apparent possession is consistent with the title appearing of record.' [Citation.]" (*Schumacher* v. *Truman* (1901) 134 Cal. 430, 432 [66 P. 591].)[7]

Appellant asserts that record title inconsistent with possession pertains to record title in the vendor, and therefore any time a lessee is in possession, whether pursuant to a recorded or unrecorded lease, the purchaser has notice sufficient to require him to investigate all additional rights of the tenant. In support of its position, appellant notes that various cases describe the record title as that belonging to the vendor. (See, e.g., *Randall* v. *Allen* (1919) 180 Cal. 298, 303 [180 P. 941]; *Smith* v. *Yule* (1866) 31 Cal. 180, 185 [overruled on another ground in *Bell* v. *Pleasant, supra,* 145 Cal. 410, 414]; *Manig* v. *Bachman, supra,* 127 Cal.App.2d 216, 223.)

Nonetheless, in *Dreyfus* v. *Hirt, supra,* 82 Cal. 621, the Supreme Court stated that the lessee's exclusive, open, and notorious possession of lands in addition to those identified in a recorded lease was inconsistent with that recorded lease and thus gave notice of a subsequent unrecorded lease, raising the inference that "record title" may include a recorded interest such as a lease. (*Id.,* at p. 626; see 2 Miller & Starr, Current Law of Cal. Real Estate, *supra,* § 11:55, p. 85.) Moreover, in at least one case, the appellate court has commented that "[p]ossession of the disputed parcel . . . was notice of *its title as lessee* . . . ." (*Sieger* v. *Standard Oil Co.* (1957) 155 Cal.App.2d 649, 657 [318 P.2d 479], italics added.) In view of these varying interpretations of "title," we decline to establish a rule that a lessee's possession consistent with a recorded lease is nevertheless inconsistent with the vendor's title and automatically creates a duty of inquiry as to the possible existence of additional rights. Therefore, we must determine whether other factors existed creating a duty of inquiry in the present case.

The great majority of the cases defining possession inconsistent with recorded title are concerned with the purchaser's notice of the tenant's rights pursuant to an unrecorded lease, easement, or deed, which rights are to some degree obvious and visible due to the nature of the tenant's posses-

---

[7] If a tenant is in possession of leased premises, and the circumstances are such as to put a purchaser on inquiry, the purchaser is charged with knowledge of all those facts a reasonably diligent inquiry would have disclosed. (*Claremont Terrace Homeowners' Assn.* v. *United States, supra,* 146 Cal.App.3d 398, 408; *Basch* v. *Tidewater etc. Co., supra,* 49 Cal.App.2d Supp. 743, 748.) " 'Possession is notice not only of whatever title the occupant has but also of whatever right he may have in the property, and the knowledge chargeable to a person after he is put on inquiry by possession of land is not limited to such knowledge as would be gained by examination of the public records.' " (*Claremont Terrace Homeowners' Assn.* v. *United States, supra,* 146 Cal.App.3d 398, 409.) Possession of land imparts to the intending purchaser "such knowledge as would be gained by inquiry from the one having such possession. [Citation.]" (*Marlenee* v. *Brown* (1943) 21 Cal.2d 668, 676 [134 P.2d 770].)

sion, and not with any unapparent rights the tenant might possess apart from those provided in a recorded lease. (See, e.g., *Bessho* v. *General Petroleum Corp.* (1921) 186 Cal. 133, 138-141 [199 P. 22]; *Smith* v. *Yule, supra,* 31 Cal. 180; *Evans* v. *Faught* (1965) 231 Cal.App.2d 698, 705 [42 Cal.Rptr. 133]; *Manig* v. *Bachman, supra,* 127 Cal.App.2d 216, 223; *Pacific Gas & Elec. Co.* v. *Minnette* (1953) 115 Cal.App.2d 698, 705 [252 P.2d 642].)

It is clear that possession by a tenant gives notice of an option to purchase *contained* in an unrecorded lease. Thus, in *Claremont Terrace Homeowners' Assn.* v. *United States, supra,* 146 Cal.App.3d 398, the appellant was charged with knowledge of an option to purchase contained in a lease, because the respondent optionee was in possession of the premises and paid the monthly amount due on the trust deed as well as the property taxes. (*Id.,* at p. 409.) The appellant's notice of the option in that case may be ascribed to the respondent's possession, which imputed notice of the lease containing the option, *and* the respondent's payment of expenses of the property consistent with ownership. Similarly, in various other jurisdictions, possession by a tenant has been held to give notice of an option contained in an unrecorded lease. (Annot., What Constitutes Notice to Subsequent Purchaser of Real Property of Option to Purchase Contained in Unrecorded Lease (1951) 17 A.L.R.2d 331.)

Several commentators appear to take the position that the circumstance of a tenant's possession may charge an intending purchaser with a duty to investigate not only the tenant's rights pursuant to an unrecorded lease but, additionally, the extent of a tenant's interests recognized in other unrecorded and unreferenced agreements with the lessor. In 2 Miller & Starr, Current Law of California Real Estate, *supra,* section 11:62, page 93, the authors comment: "The interest of a subsequent party *probably* is subject to the additional undocumented rights of the tenant since a purchaser or encumbrancer is required to investigate the rights of any person in possession of the premises and he has implied notice of any facts that would be disclosed by a reasonable investigation. [Fn. omitted.] An inquiry of the tenant probably would inform the purchaser of the additional rights of the tenant." (Italics in original.) Similarly, Witkin has observed: "a *lease* may contain special provisions, or the lessee may have special rights, under a separate agreement with the owner-lessor. Hence, (1) actual knowledge of an outstanding lease made by the vendor puts the purchaser on inquiry even though the lessee is not in possession; and (2) the purchaser must inquire not only as to rights under the lease but as to any other rights of the tenant, including those under a collateral agreement. [Citations.]" (4 Witkin, Summary of Cal. Law, *supra,* § 210, p. 414, italics in original.)

Thus, in *Basch* v. *Tidewater etc. Co., supra,* 49 Cal.App.2d Supp. 743, the defendant leased property for use as a service station and, by a separate

agreement, the lessor agreed that in the event of a temporary diversion of traffic away from the property, the lessee's rent would be reduced for that period. Neither document was recorded. After the lease was executed but prior to the defendant lessee acquiring possession, the plaintiffs purchased the property. The plaintiffs were shown the lease and took assignment of it but were unaware of the existence of the supplemental agreement.

The court held the plaintiffs were bound by the agreement reducing the defendant's rent (by $560) because they were shown the lease, awareness of which created a duty of inquiry on plaintiffs' part. (*Basch* v. *Tidewater etc. Co., supra,* 49 Cal.App.2d Supp. 743, 750.) The court quoted the following: " 'By the weight of authority, the tenant's possession is notice not only of his rights under the lease, but also of any rights which he may have under a subsequent agreement not incorporated in the instrument of lease, such as a contract for the purchase of the land.' (1 Tiffany on Landlord and Tenant, p. 866 n., citing cases.)" (49 Cal.App.2d at pp. Supp. 748-749; Annot. (1951) 17 A.L.R.2d 331.)

*Basch* dealt with a situation where the purchasers had actual notice of an *unrecorded* lease. Aside from whether *Basch* is correct on its own facts, in the present case, by contrast, appellant had possession pursuant to, and consistent with, a *recorded* lease. This circumstance raises the question whether appellant's selective and incomplete recordation of documents evidencing its rights obviated any duty of inquiry on the part of Charles Ulman.

It was held in *Three Sixty Five Club* v. *Shostak, supra,* 104 Cal.App.2d 735, that where the tenant made improvements to property inconsistent with the terms of a recorded lease, pursuant to another, unrecorded agreement which gave the tenant rights additional to those granted in the lease, the purchaser had a duty of inquiry as to the additional rights, and notice was implied.

In that case, the owner of a four-story building leased the second, third, and fourth floors to the plaintiff's predecessors-in-interest, subject to the owner's option to lease back the second floor. The plaintiff obtained the owner's oral waiver of this option and subsequently improved portions of the second floor. The lease containing the owner's option to lease back was recorded, but the owner's waiver thereof was not, and the defendant subsequently purchased the building. The court held the plaintiff-tenant's obvious improvement of the area due to be leased back to the owner and occupation of the area beyond the premises described in the lease created inconsistencies "between the apparent possession of the tenant and the terms of the recorded lease to put upon the purchaser the duty of making a

reasonable inquiry as to rights of the tenant not included in the lease." (*Three Sixty Five Club* v. *Shostak, supra,* 104 Cal.App.2d 735, 739.) Similarly, in *Dreyfus* v. *Hirt, supra,* 82 Cal. 621, a lessee's possession, which visibly exceeded the terms of a recorded lease, was held to give notice of the provisions of a subsequent unrecorded lease. (*Id.,* at p. 626.) These cases do not hold that a purchaser has a duty to inquire where the lessee is in possession pursuant to, and consistent with, the terms of a recorded lease.

■ In the present case, there was nothing apparent from appellant's possession that would give notice of rights other than those contained in the recorded short-form lease, which in turn referred to the long-form lease. Neither the short-form lease nor the long-form lease provided notice of the option to purchase. The original lessor had constructed a building on appellant's behalf, but that construction was required by the terms of the lease. The additional option to purchase possessed by appellant did not (unlike the situations in *Basch* and *Three Sixty Five Club*) confer a right to modify the existing lease, but instead granted rights wholly different from those created by the lease.

Appellant asserts that if we do not impute notice to Charles Ulman of the option, even though appellant's interest was partially recorded, the courts will be affording appellant less protection than appellant would have in the event its rights had not been recorded at all. As mentioned earlier, we do not decide what duty would arise had appellant's rights been completely recorded. We have determined that appellant's act of selectively and incompletely recording the documents evidencing its rights, especially where appellant acquired those rights simultaneously with other unrecorded rights, had the effect of lulling subsequent purchasers into the false impression they had been given notice of all of appellant's rights. The recording statutes were enacted for the purpose of establishing priorities among claims upon property and provide adequate means by which those with an interest in property may protect their rights. We decline to impose upon an intending purchaser a duty to inquire, of a tenant in possession of the property, as to all possible recorded and unrecorded rights which the tenant possesses in the property, where the tenant's possession is consistent with the documents of record.[8]

---

[8] Appellant contends for the first time on appeal that its possession was inconsistent with record title because the recorded short-form lease identified Gates Sales Division (rather than Gates Rubber Company) as the lessee and that entity's assignment to appellant was not recorded. This contention involves factual determinations open to dispute, was not presented at trial, and therefore may not be raised on appeal. (*Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 391, fn. 10 [216 Cal.Rptr. 733, 703 P.2d 73]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 316, p. 327.) We observe that even if this question were regarded as purely one of law and therefore properly raised on appeal (*Hittle* v. *Santa Barbara County Employees Retirement Assn., supra,* 39 Cal.3d 374, 391, fn. 10),

For the foregoing reasons, we affirm the judgment of the trial court. Our ruling renders it unnecessary to determine whether the trial court erred in making the additional findings that appellant had unclean hands due to an intent to avoid adverse tax consequences, and that appellant's failure to record the agreement estopped appellant from asserting its claim.

## DISPOSITION

The judgment is affirmed.

McClosky, Acting P. J., and Einstein, J.,* concurred.

A petition for a rehearing was denied October 16, 1989, and appellant's petition for review by the Supreme Court was denied January 17, 1990.

---

Charles Ulman was informed of the aforementioned change at the time the lease was assigned to him, and this discrepancy alone did not create a duty to inquire as to all other unrecorded and unreferenced documents.

*Assigned by the Chairperson of the Judicial Council.