Filed 7/24/14  Nuvision Fed. Credit Union v. Beliciu CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NUVISION FEDERAL CREDIT UNION, Plaintiff and Respondent, v. GIORGIAN BELICIU et al., Defendants and Appellants. | B243887 (Los Angeles County Super. Ct. No. NC055681) |

APPEAL from a judgment of the Superior Court of Los Angeles, Patrick T. Madden, Judge.  Affirmed.

Kostadin Peytchev, in pro. per., for Defendant and Appellant.

Giorgian Beliciu, in pro. per., for Defendant and Appellant.

Anaya Law Group, Alana B. Anaya and Jonathan A. Malek for Plaintiff and Respondent.

_____

## SUMMARY

Defendants and Appellants Kostadin Peytchev[1] and Giorgian Beliciu, in pro. per., appeal from a judgment of the superior court after a bench trial in favor of plaintiff and respondent Nuvision Federal Credit Union. We affirm.

## BACKGROUND[2]

In 2008, defendant Cynthia Theus[3] obtained a vehicle loan from plaintiff and respondent Nuvision Federal Credit Union to finance her purchase of a used Mercedes car. Nuvision had a security agreement with Theus that gave Nuvision the right to repossess the car in the event of a default on the loan.

On May 17, 2010, Theus had her car towed to appellant Peytchev's Mercedes repair shop. Peytchev gave Theus a written estimate of $756 to make the car operable[4] and asked for a $50 deposit.[5] Theus did not pay the deposit and asked Peytchev for more time. When Theus came to the repair shop a second time, she again did not pay the deposit and asked for more time. Peytchev claimed he believed Theus would pay and ordered the necessary parts to make the repair. Peytchev contacted Theus on May 28, 2010, to pay for the car repairs but Theus said she needed more time. After the end of May, Theus's phone number was disconnected and Peytchev stated he was unable to

---

[1] Kostadin Peytchev's last name is listed as Peytch in his appellate brief.

[2] We state the facts consistent with the applicable standards of review, discussed below.

[3] Theus defaulted below and did not appear at trial.

[4] The estimate was to repair the alternator and the tensioner. The car also had damage to the bumper and trunk and needed work on the transmission.

[5] Although Peytchev claimed Theus signed the estimate authorizing repairs, the trial court did not believe Peytchev's testimony and found that the signature on the repair estimate did not match Theus's signature.

contact her. Theus never returned to the shop for her car and never paid the final billed amount of $745.50.

On or about July 6, 2010, Peytchev contacted a lien company to handle the sale of Theus's Mercedes. The lien company mailed a notice to Theus and to respondent Nuvision on July 9, 2010, indicating that a lien sale was scheduled for August 9, 2010. Nuvision received the notice on July 12, 2010, but did not file a timely opposition to the sale. According to testimony from a Nuvision's employee, from July 20 to August 9, 2010, Nuvision contacted Peytchev's shop six times requesting information about Theus's car and for a breakdown of costs to claim the vehicle, speaking to Peytchev as well as an employee of his shop. In the conversations, Peytchev and his employee asked Nuvision for $3,100 to claim the car and Nuvision offered $1,250, which Peytchev and his employee rejected.

Respondent Beliciu – a car reseller for whom Peytchev had done car repair work for on prior occasions – saw the notice of the lien sale Peytchev posted at his shop and asked Peytchev about buying Theus's Mercedes. Peytchev told Beliciu what he thought the mechanical issues were with the car and also told Beliciu that he was "getting a few calls from Nuvision" or "that the credit union was bothering [him] regarding this car." At the August 9, 2010 lien sale, Beliciu bid on and purchased Theus's car for $800. Beliciu took possession of the car the next day.

On August 24, 2010, Nuvision filed a complaint against Theus, Peytchev and various Doe defendants seeking damages, a declaration of the validity of its lien and to enjoin transfer or sale of the Mercedes or a change in its registration. On November 12, 2010, Nuvision identified Beliciu as one of the Doe defendants. Peytchev and Beliciu filed cross-complaints against Nuvision.[6]

From January 30, 2012 to February 8, 2012, the court conducted an eight-day bench trial. On June 18, 2012, the trial court issued a statement of decision in favor of Nuvision. In the statement of decision, the trial court rejected Beliciu's contention that

---

[6] Peytchev's cross-complaint also named Theus as a cross-defendant.

3

he was a bona fide purchaser of the Mercedes and therefore entitled to keep the vehicle. Specifically, the trial court stated:

"Beliciu denied that he had any knowledge before the sale of Nuvision's interest in the Subject Vehicle. This testimony is not credible. Beliciu is a convicted felon – convicted of receiving stolen property. He is experienced in buying and selling used cars – Beliciu operates a wholesale used car business . . . . This is his occupation. Beliciu personally knows Peytchev and has done business with him in the past. In addition, notwithstanding Beliciu's testimony that he paid Peytchev $800 for the Subject Vehicle, no canceled check was presented at trial to corroborate this claim.

"The court finds that based on the evidence adduced from the trial and from the reasonable inferences from the evidence, Peytchev and Beliciu concocted a scheme for Beliciu to acquire the Subject Vehicle for either free or for a nominal amount, free of lien from the legal owner, Nuvision. Moreover, the court finds that before Beliciu purportedly acquired the Subject Vehicle at the lien sale, Beliciu knew of Nuvision's interest in the Subject Vehicle because Peytchev told him. The court finds that the lien sale was a sham – it was a procedure adopted by Peytchev and Beliciu to permit Beliciu to acquire from Peytchev a vehicle abandoned by Theus at Peytchev's Automotive." The trial court also found that there was "no credible evidence that Theus authorized the repair," stating that it did not believe Peytchev's testimony that Theus signed the estimate for repairs and that the court had compared the purported signature of Theus on the repair estimate with Theus's signature on another document not under dispute and it was clear the signatures were not the same.

Also on June 18, 2012,[7] the trial court issued a judgment voiding the transfer and purported lien sale of the Mercedes to Beliciu and finding Beliciu was "not a bona fide purchaser" of the car. The judgment was also against Theus for the unpaid balance of the loan and interest, less the value of the Mercedes which was returned to Nuvision. The judgment was for Nuvision on Peytchev's and Beliciu's cross-complaints and also

---

[7] A prior judgment issued on April 23, 2012, was vacated after Peytchev requested a statement of decision.

4

awarded Nuvision its costs against all defendants and attorney fees against Peytchev under Civil Code section 3068 and Vehicle Code section 10652.5.

On July 13, 2012, Peytchev and Beliciu moved for a new trial. The motion was denied. Peytchev and Beliciu timely appealed.

## DISCUSSION

On appeal, Beliciu and Peytchev filed duplicate briefs arguing that Beliciu was a bona fide purchaser for value, there was no violation of the lien sale statutes, proper notice of the lien was given, and the new trial motion was improperly denied as no substantial evidence supported the trial court's decision.[8] We disagree and affirm.

In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the respondent. We accept as true all the evidence and reasonable inferences that support the trial court's decision, and resolve every conflict in favor of the judgment. (*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.* (2007) 148 Cal.App.4th 937, 951.) "'"It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, in support of the judgment."'" (*Ibid.*) We view the evidence in the light most favorable to the verdict (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 110), and we draw all reasonable inferences in favor of the prevailing party. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.) Applying this standard, we affirm.

"'The elements of bona fide purchase are payment of value, in good faith, and *without actual or constructive notice of another's* rights. [Citation.]' [Citation.] 'The absence of notice is an essential requirement in order that one may be regarded as a bona fide purchaser.' [Citation.]" (*Gates Rubber Co. v. Ulman* (1989) 214 Cal.App.3d 356,

---

[8] In his opening brief, Peytchev states: "As the issues are identical, this Appellant Brief by Kostadin Peytch is identical to that submitted by Appellant Giorgian Beliciu." Neither Peytchev nor Beliciu filed a reply brief.

5

364.) Here, the trial court did not find to be credible Beliciu's claim that he was unaware of Nuvision's security interest in Theus's car and credited Peytchev's statement that he told Beliciu about Nuvision. We are bound by the trial court's credibility determinations and neither reweigh the evidence nor reassess credibility determinations, as "'[t]he Court of Appeal is not a second trier of fact . . . .' [Citation.]" (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531; *Estate of Young* (2008) 160 Cal.App.4th 62, 76.)

In addition, under Business and Professions Code section 9884.9, subdivision (a), "The automotive repair dealer shall give to the customer a written estimated price for labor and parts necessary for a specific job. No work shall be done and no charges shall accrue before authorization to proceed is obtained from the customer." The trial court did not believe Peytchev's claim that Theus signed the written repair estimate, thereby authorizing him to make the repairs, and concluded, "there is no credible evidence that Theus authorized the repair." Again, we do not reweigh the evidence or reassess the trial court's credibility determinations.[9] (*Marriage of Balcof*, *supra*, 141 Cal.App.4th at p. 1531; *Estate of Young*, *supra*, 160 Cal.App.4th at p. 76.) "A dealer who fails to comply with section 9884.9 may not recover under any theory. [Citation.]" (*Hibbs v. Allstate Ins. Co.* (2011) 193 Cal.App.4th 809, 817.) Accordingly, we affirm the trial court's judgment determining that Beliciu was not a bona fide purchaser and voiding the purported lien sale and transfer of Theus's car.[10]

---

[9] We do not agree with appellants' contention that the trial court's conclusion that the signature on the estimate was not Theus's signature indicated that the trial court misunderstood the statute's requirement for authorization as necessitating a signature as evidence of authorization. Rather, the trial court broadly concluded that there was "no credible evidence that Theus authorized the repair" and then specifically addressed, and did not believe, Peytchev's claim that Theus had authorized the repairs by signing the estimate.

[10] Our conclusions above make it unnecessary for us to address appellants' arguments that the trial court erred in finding the notice of the lien sale was improper or finding that the lien sale otherwise did not comply with lien statute provisions.

6

**DISPOSITION**

The judgment is affirmed.  Respondent shall recover its costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.